MASXP-20110425
guinchri

Case 1:13-cv-10984-DJC Document 1-1 Filed 04/29/13   Page 1 of 45
NORFOLK SUPERIOR COURT
Case Summary
Civil Docket

04/25/2013
10:50 AM

## NOCV2013-00027
## Lightbody v Wal-Mart Stores East, L.P.

| | | | |
|---|---|---|---|
| **File Date** | 01/07/2013 | **Status** | Disposed: transfered to other court (dtrans) |
| **Status Date** | 04/23/2013 | **Session** | A - Civil A-CtRm 10 |
| **Origin** | 1 - Complaint | **Case Type** | B22 - Employment Discrimination |
| **Track** | F - Fast track | **Lead Case** | |
| | | **Jury Trial** | Yes |

### DEADLINES

| | Service | Answer | Rule12/19/20 | Rule 15 | Discovery | Rule 56 | Final PTC | Judgment |
|---|---|---|---|---|---|---|---|---|
| **Served By** | | | 05/07/2013 | 05/07/2013 | 11/03/2013 | 12/03/2013 | | |
| **Filed By** | 04/07/2013 | 05/07/2013 | 06/06/2013 | 06/06/2013 | | 01/02/2014 | | 10/29/2014 |
| **Heard By** | | | 07/06/2013 | 07/06/2013 | | | 05/02/2014 | |

### PARTIES

**Plaintiff**
Diana  Lightbody
Active 01/07/2013

**Private Counsel 542396**
Samuel Perkins
Brody Hardoon Perkins & Kesten
1 Exeter Plaza
699 Boylston Street
Boston, MA 02116
Phone: 617-880-7100
Fax: 617-880-7171
Active 01/07/2013 Notify

**Defendant**
 Wal-Mart Stores East, L.P.
Served: 03/25/2013
Served (answr pending) 03/29/2013

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 01/07/2013 | 1.0 | Complaint & Jury Claim Filed $280 Entry Fee Paid (Receipt #36726 for $280.00) |
| 01/07/2013 | | Origin 1, Type B22, Track F. |
| 01/07/2013 | 2.0 | Civil action cover sheet filed |
| 01/07/2013 | | Fast Track Notice Sent to Attorney |
| 01/17/2013 | | ONE TRIAL review by Clerk, Case is to remain in the Superior Court |
| 03/29/2013 | 3.0 | SERVICE RETURNED: Wal-Mart Stores East, L.P.(Defendant) - Delivered in hand to J. Descovich Corp Operations Specialist agent, person in charge at the time of service on 3/25/2013 |
| 04/23/2013 | | Case status changed to 'Needs review for answers' at service deadline review |
| 04/23/2013 | 4.0 | Notice of filing of notice of removal |
| 04/23/2013 | 5.0 | Notice of removal - Case REMOVED this date to US District Court of Massachusetts |

I ATTEST THAT THIS DOCUMENT IS A
CERTIFIED PHOTOCOPY OR AN ORIGINAL
ON FILE.
Deputy Assistant Clerk  4/25/13

### EVENTS

*/. O*

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.                               SUPERIOR COURT
                                          C.A. NO.: NOCV2013-

                                          13   00027

|                                  |     |
| -------------------------------- | --- |
| DIANA LIGHTBODY,                 | )   |
|                                  | )   |
|                  Plaintiff       | )   |
|                                  | )   |
|        v.                        | )   |
|                                  | )   |
| WAL-MART STORES EAST, L.P.       | )   |
|                                  | )   |
|                  Defendant       | )   |

RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY
*1-7-13*

### COMPLAINT

Diana Lightbody brings the following complaint against Wal-Mart Stores East, L.P. ("Walmart") for violation of Mass. Gen. L. ch. 151B, and alleges:

### PARTIES

1. Diana Lightbody is a resident of Connecticut and has been an employee of Wal-Mart stores in Massachusetts for nineteen years. She has been a Zone Manager Supervisor in Walmart store No. 2103 in Walpole, Norfolk County, Massachusetts, since September 28, 2009, and was a Department Manager before that. She currently oversees the apparel department in the Walpole Walmart store.

2. Wal-Mart Stores East, L.P. is the owner of Walmart Store No. 2103 in Walpole, Norfolk County, Massachusetts ("The Walpole store").

### JURISDICTION

3. Ms. Lightbody originally filed her complaint with the Massachusetts Commission Against Discrimination on April 16, 2010 and subsequently obtained the MCAD's

1

permission to remove this matter to Superior Court.

## FACTUAL ALLEGATIONS

4. The senior manager in the Walpole store in 2009-2010 was Store Manager Leo Desousa. Just below him in authority were the Assistant Managers, Robin Wilson and Walter Budz. As a Zone Manager Supervisor ("ZMS"), Ms. Lightbody was one management level below Assistant Managers Wilson and Budz.

5. In order to become a ZMS, Ms. Lightbody attended a week-long training in September, 2009 at the Mansfield, Massachusetts Holiday Inn with roughly twenty other Walmart managers. The training included sessions on respect for other employees and customers, and detailed information on sexual harassment and the penalties for violating Walmart rules and regulations.

6. After the training, all management trainees were required to take CBL ("Computer Based Learning") tests at their stores, to determine whether they had understood and retained the material. One of the CBL's was specifically addressed to sexual harassment. All Walmart management staff at the ZMS level and above have had comparable training in sexual harassment.

7. In September of 2009, Assistant Manager Robin Wilson was transferred to the Walpole store from another Massachusetts Walmart store. Mr. Wilson, who is African American, told co-workers at the Walpole store that he was married, and that he had a child who lived in the South.

8. Within two weeks of his arrival at the Walpole store, Mr. Wilson asked Ms. Lightbody if she was married, and began telling Ms. Lightbody that she looked good, that she was "hot." He would roll his tongue around his lips suggestively while

2

looking at her. He began to touch Ms. Lightbody while talking with her, even though they did not have a professional or personal relationship that would have made touching acceptable.

9. In late October 2009, Ms. Lightbody told Cathy McComb, the personnel manager of the Walpole store, about Mr. Wilson's inappropriate behavior. Ms. McComb recommended that Ms. Lightbody keep a log of the incidents, and Ms. Lightbody began the log the first week of November 2009.

10. Soon afterward, Ms. Lightbody told Ms. McComb about Wilson's inappropriate behavior, Ms. McComb told Ms. Lightbody that Mr. Wilson had begun to touch her too, during meetings in her office to discuss work schedules.

11. Ms. Lightbody later learned that Bonnie McLaughlin, who was in charge of store invoicing, had had similar experiences with Mr. Wilson. Ms. McComb told Ms. Lightbody that Mr. Wilson had told her that he wanted to put her over his knee and spank her, and that while saying this he had mimicked spanking behavior.

12. Ms. McComb and Bonnie McLaughlin told Ms. Lightbody that while working with them Mr. Wilson touched them and rubbed their arms.

13. From mid-November to mid-December, 2009, Mr. Wilson continued to harass Ms. Lightbody in a variety of ways. He repeatedly told Ms. Lightbody that she was "hot" and told Ms. Lightbody that she "excited" him. He pinched her stomach several times and tried to pinch her buttocks. He told her, Cathy McComb and Alexia, the Head Cashier, that his wife was going to be away for the weekend so he planned to sit naked on the couch. He repeatedly would do things to get Ms. Lightbody's attention and then wiggle his tongue suggestively.

14. Ms. Lightbody told Mr. Wilson that she did not appreciate this kind of behavior, but after several weeks of continued harassment, it became clear that Ms. Lightbody was not going to be able to stop him. By this point she was losing sleep, was upset and worried each day we worked the same shift as Mr. Wilson. She also was physically scared of his repeated attempts to touch, grab and pinch her.

15. Ms. Lightbody spoke with Walter Budz, another Assistant Manager at the Walpole store, to discuss her concerns about Mr. Wilson. On December 17, 2009, she filed a written sexual harassment complaint with the store Manager, Leo Desousa.

16. As a result of Ms. Lightbody's complaint against Mr. Wilson, Walmart opened a sexual harassment investigation, known as a "Red Book" investigation. The investigation was conducted by Jennifer Castillo, the Human Resource Market Manager for the nine-store "market" that includes the Walpole store.

17. Ms. Lightbody met with Ms. Castillo during the week following December 17 to discuss the complaint against Mr. Wilson. Ms. Lightbody told Ms. Castillo what Mr. Wilson had done, gave her a copy of the log Ms. Lightbody had kept, and gave her the names of witnesses who could corroborate certain incidents described in the log.

18. About two weeks later, on January 7, 2010, Ms. Castillo scheduled a meeting with Ms. Lightbody to discuss the results of her investigation. Also attending the meeting were Walpole store manager Leo Desousa and Kevin Kennedy, a district Loss Prevention Manager. Ms. Lightbody asked why Mr. Kennedy was there, and was told he attended meetings when there was a potential lawsuit.

19. At the meeting, Ms. Castillo told Ms. Lightbody Walmart had "closed" the investigation, and that Mr. Wilson would remain working as Assistant Manager as

before. Ms. Lightbody asked whether there were going to be any consequences for Mr. Wilson. Ms. Castillo responded that the company would not punish him because he had denied any significant wrongdoing.

20. Ms. Lightbody learned later that Walmart management told Mr. Wilson to repeat the computerized CBL test on sexual harassment--a test he had taken at least once before.

21. Ms. Castillo said at the Meeting January 7, 2010 that Mr. Wilson had admitted some of the inappropriate behavior the other women had accused him of, but had denied what Ms. Lightbody had said he had done to her. Ms. Castillo said that Mr. Wilson had admitted telling Ms. McComb that he wanted to lay her across his knees and spank her. Ms. Castillo said Mr. Wilson had denied grabbing Ms. Lightbody or trying to.

22. Ms. Castillo's presentation at the January 7 meeting demonstrated that Walmart had accepted Mr. Wilson's denials concerning Ms. Lightbody's complaint at face value, without even a superficial investigation, and despite Wilson's admissions that he had harassed other female employees.

23. Ms. Castillo's decision to accept Wilson's denial convinced Ms. Lightbody that Walmart management was telling her the company believed she had fabricated her complaint. During the January 7 meeting, Ms. Castillo provided further insight into Walmart's thinking when she asked Ms. Lightbody whether Ms. Lightbody had "led him on," and revealed that during its investigation into her complaint Walmart had looked into whether Ms. Lightbody was "a troublemaker."

24. After hearing Ms. Castillo's presentation at the January 7 meeting, Ms. Lightbody was extremely upset. She had worked for sixteen years at Walmart, and had risen to a

management position. She expected that the company would do a real investigation of sexual harassment complaints by three employees, which included, in her case, repeated physical contact, grabbing, and sexually suggestive comments and gestures. In response, the company had asked if she had led Mr. Wilson on, had not interviewed witnesses who could corroborate what Ms. Lightbody had said, had instead investigated whether she was a "troublemaker," and had not imposed any discipline on Mr. Wilson.

25. Ms. Lightbody knew from her management training that Mr. Wilson's behavior was a violation of company policy, and should have led to a much more serious sanction than repeating a CBL unit. Ms. Lightbody was particularly upset that Walmart management had decided she had fabricated her complaint, even though they had not interviewed the witnesses she told them about. Finally, she was upset that Walmart had decided to have Ms. Lightbody work the same schedule as before with Mr. Wilson, after effectively telling her they thought she had lied to get him in trouble.

26. On January 11, 2010, four days after Ms. Lightbody's meeting with Mr. Castillo, she learned from Alyssha Dellis, another ZMS, that Ms. Dellis had witnessed Mr. Wilson grabbing and pinching Ms. Lightbody's stomach at least twice. Ms. Dellis said she was nervous about getting Mr. Wilson in trouble, but agreed to meet with Walter Budz, the Assistant Manager.

27. On the evening of January 11, 2010, Ms. Dellis and Ms. Lightbody met with Mr. Budz, who asked Ms. Dellis what she had seen. Ms. Dellis told Mr. Budz that she had seen Mr. Wilson grab and pinch Ms. Lightbody. Ms. Dellis told Budz that she was worried Mr. Wilson would be fired because of what she was saying. Mr. Budz said he

would talk with Store Manager Leo Desousa about what Ms. Dellis had said.

28. Ms. Lightbody waited several days, and then asked Ms. Dellis whether Mr. Desousa had spoken to her about the information Ms. Dellis had provided Butz on January 11. Ms. Dellis said no one had asked her about the information she had given Mr. Budz about Mr. Wilson on January 11.

29. Early the morning of January 13, 2010, when Mr. Wilson and Ms. Lightbody were the only management personnel in the store, Mr. Wilson paged Ms. Lightbody and asked her to come to the management office to speak with him. Given Mr. Wilson's behavior and Walmart's recent decision to take his word over hers, despite corroboration of her accusation by at least one witness, Ms. Lightbody chose not to meet alone with Mr. Wilson in the management office. Instead, she called him on the phone from the floor.

30. Later on January 13, Ms. Lightbody spoke with Store Manager Leo Desousa about Mr. Wilson. She told Mr. Desousa that Ms. Dellis had confirmed what Ms. Lightbody had said about Mr. Wilson grabbing her, and that Assistant Manager Budz had heard Ms. Dellis' account.

31. In providing this additional evidence to Store Manager Desousa on January 13, 2010, Ms. Lightbody wanted and expected Mr. Desousa to treat this new information seriously. She expected him at least to decide that she had been telling the truth about Mr. Wilson, and she hoped Mr. Desousa would use this new evidence to reopen the investigation into her harassment complaint against Mr. Wilson.

32. Instead of inquiring about the new information that proved Mr. Wilson had harassed Ms. Lightbody and lied to Walmart investigators, Mr. Desousa instead focused on her

response to Mr. Wilson's page earlier that day. Mr. Desousa said he'd heard that Ms. Lightbody didn't want to meet alone with Mr. Wilson in the management office, and asked, "Why didn't you go?" Ms. Lightbody said she was scared of what Mr. Wilson might do, and was also scared that if anything did happen, Walmart would choose to believe Mr. Wilson's version and reject hers.

33. Mr. Desousa said, "I'm sorry you feel that way. Is this the way it's going to be forever?"

34. Based upon her interaction with Mr. Desousa, and Walmart's failure to reopen its investigation into her complaints against Mr. Wilson, Ms. Lightbody believes that Store Manager Desousa did not tell Ms. Castillo that Ms. Dellis had corroborated Ms. Lightbody's complaint, and believes that Mr. Desousa took no action to reopen the investigation or determine whether Wilson had lied to investigators.

35. The outcome of Walmart's investigation demonstrates that Walmart had no interest in finding out any information that might obligate the company to terminate Mr. Wilson or disrupt operation of the Walpole store. Jennifer Castillo chose not to interview witnesses who would have confirmed that Mr. Wilson had done just what Ms. Lightbody accused him of. When Ms. Lightbody told Mr. Desousa there were witnesses who would prove what she said, Mr. Desousa didn't bother to check this information, reopen the investigation, or even tell Ms. Lightbody that he now believed what she had alleged. Instead, Store Manager Desousa in substance told Ms. Lightbody that she should forget what had happened and accept that Mr. Wilson could do what he wanted. Walmart management deliberately curtailed its investigation, "closed" it prematurely, and refused to consider additional evidence

that proved Mr. Lightbody's complaint.

36. Ms. Lightbody's case is not the only occasion on which management at the Walpole store decided to ignore obviously unlawful sexual harassment. In early March 2010, a young male maintenance worker, Jaison, dropped his pants to the ground in front of a young female cashier, exposing himself. He claimed it was an accident, but the circumstances—including the fact that he was not wearing any underwear--show that it was deliberate. The head cashier, Alexia, complained to Leo Desousa about the incident. Mr. Desousa told Mr. Wilson to take care of the problem, and Mr. Wilson said he had--by telling Jaison to wear underwear from then on. Mr. Wilson and Mr. Desousa both laughed, and it was obvious that they did not consider the incident significant.

37. Despite Walmart's policy against sexual harassment, and its supposed investigation of Mr. Wilson's behavior, the net result of Walmart's investigation was that Mr. Wilson knew he could get away with sexual harassment. Following Ms. Lightbody's complaint and Walmart's deliberately ineffective investigation, Mr. Wilson grabbed and hugged another employee who works for Ms. Lightbody, Amy Shaughnessy, shocking her and scaring her.

38. Walmart's investigation into Mr. Lightbody's complaint was carefully tailored to further Walmart's managerial convenience. Company investigators chose to believe petty complaints against Mr. Wilson—complaints that would leave him in place with nothing more than a warning—and disbelieve Ms. Lightbody's complaint, which normally would lead to termination of an Assistant Manager.

39. Walmart's handling of Ms. Lightbody's harassment complaints violated M.G.L. c.

151B, § 4 in a particularly outrageous and egregious way. The investigation of her

complaint, which under the law is supposed to protect her and her female co-workers

from harassment, was not designed to determine the truth or to impose appropriate

discipline. To the contrary, it was designed to notify Ms. Lightbody and other female

employees that complaints that might force Walmart to replace management

personnel would not be investigated competently or thoroughly, and would end with

the victim being accused of "leading on" the harasser or being a "troublemaker."

40. As a result of Walmart's violations of ch 151B, § 4, Ms. Lightbody has suffered

severe emotional distress.

## COUNT I

41. Walmart's behavior, as alleged above, violated its duties to Ms. Lightbody under

M.G.L. c. 151B, § 4.

42. Walmart's perversion of the investigative process, and use of that process to deter

complaints and punish the complainant for making allegations that might lead to

termination of an Assistant Manager, was an egregious and outrageous violation of ch.

151B, § 4, justifying punitive damages.

WHEREFORE, Diana Lightbody demands judgment against Walmart awarding

her compensatory damages, punitive damages, interest and attorney's fees.

JURY DEMAND

THE PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES.


Respectfully submitted,

Plaintiff,
DIANA LIGHTBODY,
By her attorney,

_____
Samuel Perkins, BBO # 542396
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100
(617) 880-7171
sperkins@bhpklaw.com

Dated: January 7, 2013

I ATTEST THAT THIS DOCUMENT IS A
CERTIFIED PHOTOCOPY OF AN ORIGINAL
ON FILE

Deputy Assistant Clerk   4/25/13

11

| CIVIL ACTION<br>COVER SHEET | DOCKET NO.(S)<br>B 0637 | Trial Court of Massachusetts<br>Superior Court Department<br>County: Norfolk |
|---|---|---|

| PLAINTIFF(S)<br>Diana Lightbody | DEFENDANT(S)<br>Wal-Mart Stores East, L.P. |
|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Samuel Perkins<br>Brody, Hardoon, Perkins & Kesten, One<br>Exeter Plaza, BOston, MA 02116, 617-880-7100<br>Board of Bar Overseers number: 542396 | ATTORNEY (if known)<br>**RECEIVED & FILED<br>CLERK OF THE COURTS<br>NORFOLK COUNTY**<br>1-7-13 |
|---|---|

### Origin code and track designation

Place an x in one box only:

- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO.          TYPE OF ACTION (specify)          TRACK          IS THIS A JURY CASE?

B22          Employment Discrimination          (F )          ( X )Yes          ( ) No

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
 1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . . .
 2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . . .
 3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . . .
 4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . . .
 5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . . .
                                                                        Subtotal $ . . . . . . . . . . . .
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . $ . . . . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . . .
F. Other documented items of damages (describe) Emotional Distress- In excess of $50,000
                                                                                 $ . . . . . . . . . . . .

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                                                 $ . . . . . . . . . . . .
                                                                        TOTAL $ 50,000 + . . . . . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

I ATTEST THAT THIS DOCUMENT IS A
CERTIFIED PHOTOCOPY OF AN ORIGINAL
ON FILE.

Deputy Assistant Clerk 4/25/13

                                                                        TOTAL $. . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record                                        DATE: 1-7-2013

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

## CIVIL ACTION COVER SHEET
## INSTRUCTIONS

### SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

#### CONTRACT

| | | |
|---|---|---|
| A01 | Services, labor and materials | (F) |
| A02 | Goods sold and delivered | (F) |
| A03 | Commercial Paper | (F) |
| A08 | Sale or lease of real estate | (F) |
| A12 | Construction Dispute | (A) |
| A99 | Other (Specify) | (F) |

#### TORT

| | | |
|---|---|---|
| B03 | Motor Vehicle negligence-personal injury/property damage | (F) |
| B04 | Other negligence-personal injury/property damage | (F) |
| B05 | Products Liability | (A) |
| B06 | Malpractice-medical | (A) |
| B07 | Malpractice-other(Specify) | (A) |
| B08 | Wrongful death,G.L.c.229,s2A | (A) |
| B15 | Defamation (Libel-Slander) | (A) |
| B19 | Asbestos | (A) |
| B20 | Personal Injury-Slip&Fall | (F) |
| B21 | Environmental | (A) |
| B22 | Employment Discrimination | (F) |
| B99 | Other (Specify) | (F) |

#### REAL PROPERTY

| | | |
|---|---|---|
| C01 | Land taking (eminent domain) | (F) |
| C02 | Zoning Appeal, G.L. c.40A | (F) |
| C03 | Dispute concerning title | (F) |
| C04 | Foreclosure of mortgage | (X) |
| C05 | Condominium lien and charges | (X) |
| C99 | Other (Specify) | (F) |

#### EQUITABLE REMEDIES

| | | |
|---|---|---|
| D01 | Specific performance of contract | (A) |
| D02 | Reach and Apply | (F) |
| D06 | Contribution or Indemnification | (F) |
| D07 | Imposition of Trust | (A) |
| D08 | Minority Stockholder's Suit | (A) |
| D10 | Accounting | (A) |
| D12 | Dissolution of Partnership | (A) |
| D13 | Declaratory Judgment G.L.c.231A | (A) |
| D99 | Other (Specify) | (F) |

#### MISCELLANEOUS

| | | |
|---|---|---|
| E02 | Appeal from administrative Agency G.L. c. 30A | (X) |
| E03 | Action against Commonwealth Municipality, G.L. c.258 | (A) |
| E05 | All Arbitration | (X) |
| E07 | c.112,s.12S (Mary Moe) | (X) |
| E08 | Appointment of Receiver | (X) |
| E09 | General contractor bond, G.L. c.149,s.29,29a | (A) |
| E11 | Workman's Compensation | (X) |
| E14 | Chapter 123A Petition-SDP | (X) |
| E15 | Abuse Petition, G.L.c.209A | (X) |
| E16 | Auto Surcharge Appeal | (X) |
| E17 | Civil Rights Act, G.L.c.12,s.11H | (A) |
| E18 | Foreign Discovery proceeding | (X) |
| E96 | Prisoner Cases | (F) |
| E97 | Prisoner Habeas Corpus | (X) |
| E99 | Other (Specify) | (X) |

### TRANSFER YOUR SELECTION TO THE FACE SHEET.

EXAMPLE:

| CODE NO. | TYPE OF ACTION (SPECIFY) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | (F) | ☒ Yes  ☐ No |

### SUPERIOR COURT RULE 29

**DUTY OF THE PLAINTIFF.** The plaintiff or his/her counsel shall set forth, on the face sheet (or attach additional sheets as necessary), a statement specifying in full and itemized detail the facts upon which the plaintiff then relies as constituting money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served on the defendant together with the complaint. If a statement of money damages, where appropriate is not filed, the Clerk-Magistrate shall transfer the action as provided in Rule 29(5)(C).

**DUTY OF THE DEFENDANT.** Should the defendant believe the statement of damages filed by the plaintiff in any respect inadequate, he or his counsel may file with the answer a statement specifying in reasonable detail the potential damages which may result should the plaintiff prevail. Such statement, if any, shall be served with the answer.

### A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT, BUFF COLOR PAPER.

### FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY MAY RESULT IN DISMISSAL OF THIS ACTION.

3,0

(TO PLAINTIFF'S ATTORNEY:   PLEASE CIRCLE TYPE OF ACTION INVOLVED:
TORT, MOTOR VEHICLE TORT - CONTRACT -
EQUITABLE RELIEF - OTHER)

RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY
3/29/13

**COMMONWEALTH OF MASSACHUSETTS**

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION

NO. CV2013-00027

Diana Lightbody

———————————————, *Plaintiff(s)*

v.

Wal-Mart Stores East, L.P.

———————————————, *Defendant(s)*

## SUMMONS

To the above-named Defendant:  Wal-Mart Stores East, L.P.

Brody, Hardoon, Perkins & Keste:
You are hereby summoned and required to serve upon Samuel Perkins, Esq. of
plaintiff's attorney, whose address is 1 Exeter Plaza, 699 Boylston Street, Boston,
MA  02116
an answer to the complaint which is herewith served upon you, within 20 days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint. You are also required to file your answer to the
complaint in the office of the Clerk of this court at Dedham either before service upon the plaintiff's
attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim
which you may have against the plaintiff which arises out of the transaction or occurrence that is the
subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other
action.

**BARBARA J. ROUSE, Esquire**

WITNESS,                              , at Boston            the 19th

day of February                    , in the year of our Lord two thousand and Thirteen.

I ATTEST THAT THIS DOCUMENT IS A
CERTIFIED PHOTOCOPY OF AN ORIGINAL
ON FILE.

Deputy Assistant Clerk  4/25/13

Clerk.

NOTES:
1.  This summons is issued pursuant to Rules 4 of the Massachusetts Rules of Civil Procedure.
2.  When more than one defendant is involved, the names of all such defendants should appear in the caption.
    If a separate summons is used for each such defendant, each should be addressed to the particular defendant.

F-33

**Suffolk County Sheriff's Department** · 132 Portland Street, Boston, MA 02114 · (617) 704-6999

March 26, 2013

*Suffolk, ss.*

I hereby certify and return that on 3/25/2013 at 1:30 PM I served a true and attested copy of the Summons, Complaint, Cover Sheet and Tracking Order, Notice of Appearance in this action in the following manner: To wit, by delivering in hand to J. Descovich Corp Operations Specialist agent, person in charge at the time of service for Wal-Mart Stores, East, L.P., c/o National Registered Agents, Inc. 155 Federal Street Suite 700 Boston, MA 02110 .  Attest/Copies ($5.00) Basic Service Fee ($30.00) Postage and Handling ($1.00) Travel ($6.40) Total: $42.40

Deputy Sheriff  John Cotter

*John Cotter*

Deputy Sheriff

**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

, 20    .

COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
CIVIL ACTION

NORFOLK, ss.

NO. CV2013-00027

Diana Lightbody ...................... *Plaintiff*

v.

Wal-Mart Stores East, L.P. ...................... *Defendant*

**SUMMONS**

**(Mass. R. Civ. P.4)**

4.0

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.
SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

DIANA LIGHTBODY,

     Plaintiff,

C.A. NO. NOCV2013-00027

v.

WAL-MART STORES EAST, L.P.

     Defendant.

4/23/13
RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY

## NOTICE OF FILING OF NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, defendant Wal-Mart Stores East, L.P., by

its undersigned counsel, hereby gives notice to the Superior Court of Norfolk County,

Massachusetts, and to the attorney of record for Plaintiff Diana Lightbody that, on April 19,

2013, Defendant filed a Notice of Removal, thereby removing this Action to the United States

District Court for the District of Massachusetts.  A certified copy of the Notice of Removal is

attached hereto.

Respectfully submitted,

WAL-MART STORES EAST, L.P.

By its attorneys,

Christopher B. Kaczmarek (No. 647085)
LITTLER MENDELSON, P.C.
One International Place, Suite 2700
Boston, MA 02110
(617) 378-6000 (t)
(617) 737-0052 (f)
ckaczmarek@littler.com

I ATTEST THAT THIS DOCUMENT IS A
CERTIFIED PHOTOCOPY OF AN ORIGINAL
ON FILE.

Deputy Assistant Clerk    4/25/13

Dated:  April 22, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of April 2013, a true copy of the foregoing Notice

of Filing of Notice of Removal was served via first class mail upon the attorney of record for

plaintiff:

> Samuel Perkins
> Brody, Hardoon, Perkins & Kesten, LLP
> One Exeter Plaza
> Boston, MA  02116

Christopher B. Kaczmarek

Firmwide:119625338.1 015602.8370

2



**Littler**
Employment & Labor Law Solutions Worldwide

Littler Mendelson, PC
One International Place
Suite 2700
Boston, MA  02110

Christopher B. Kaczmarek
617.378.6017 direct
617.378.6000 main
617.507.8046 fax
ckaczmarek@littler.com

April 22, 2013

**VIA OVERNIGHT MAIL**

Civil Clerk
Norfolk Superior Court
650 High Street
Dedham, MA 02026

**Re:    Lightbody v. Wal-Mart Stores East, L.P.**
        <u>**Civil Action No. NOCV2013-00027**</u>

Dear Sir or Madam:

Enclosed for filing in the above-referenced matter, please find the original and one copy of the Notice of Filing of Notice of Removal, with attached certified copy of the Notice of Removal.

Please stamp the marked copy of the Notice with the date and fact of filing and return it to me via the enclosed self-addressed, postage prepaid envelope.

Please contact my paralegal, Melissa Gorman, at 617-378-6032 upon assembly of the certified copy of the record for filing in federal court.

Sincerely,

Christopher B. Kaczmarek

/mg
Encls.
cc:    Samuel Perkins, Esq.

Firmwide:119625577.1 015602.8370

littler.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DIANA LIGHTBODY,

            Plaintiff,

v.

WAL-MART STORES EAST, L.P.

            Defendant.

Civil Action No.

4/23/13

CLERK OF THE ...
NORFOLK COUNTY

## NOTICE OF REMOVAL

Defendant Wal-Mart Stores East, L.P. ("Defendant") files this Notice of Removal in accordance with 28 U.S.C. §§ 1332, 1441, and 1446 and hereby removes this action from the Norfolk County Superior Court (the "Superior Court") to the United States District Court for the District of Massachusetts. As its reasons for removal, Defendant states as follows:

1.      On or about January 7, 2013, plaintiff Diana Lightbody filed a lawsuit in the Superior Court titled *Diana Lightbody v. Wal-Mart Stores East, L.P.,* Civil Action No. NOCV2013-00027 (the "Pending Action").

2.      Defendant's registered agent for service of process was served with a copy of the Summons and Complaint on March 25, 2013. Therefore, this Notice of Removal is timely. See 28 U.S.C. § 1446(b).

3.      This Court has diversity jurisdiction over the Pending Action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.      Plaintiff is a resident of the state of Connecticut. See Compl. ¶ 1. Defendant Wal-Mart Stores East, L.P. is a limited partnership organized under the laws of the State of

Delaware, with a principal place of business in Arkansas. Thus, there is complete diversity among the parties.

5.     Although Plaintiff's Complaint does not specify the precise amount of damages sought, there is more than a reasonable probability that the amount in controversy in this case exceeds $75,000.00, exclusive of interest and costs. In her Complaint, Plaintiff seeks the full panoply of damages available to her under Massachusetts General Laws Chapter 151B, including emotional distress damages, compensatory damages, punitive damages, and attorney's fees. See Compl. at p. 10. Moreover, in the Civil Action Cover Sheet filed by Plaintiff in the Superior Court (a copy of which is attached as part of Exhibit A hereto), Plaintiff claims that she suffered over $50,000.00 in emotion distress damages alone. As a result, there is more than a reasonable probability that the amount in controversy in this case exceeds $75,000.00, exclusive of interest and costs. Accordingly, this Court has jurisdiction over the Pending Action pursuant to 28 U.S.C. § 1332(a).

6.     Attached hereto as Exhibit A is true and correct copy of all process, pleadings (including the Summons and Complaint), and orders served on Defendant in the Pending Action. See 28 U.S.C. § 1446(a).

7.     The Pending Action is properly removed to this Court under 28 U.S.C. §§ 1441 and 1446 because it is pending in Norfolk County, Massachusetts, which lies within this District.

8.     A true and complete copy of this Notice of Removal has been served this day by overnight delivery upon the Clerk of the Norfolk County Superior Court for filing in accordance with 28 U.S.C. § 1446(d). A copy of the Notice of Filing of Notice of Removal is attached hereto as Exhibit B, the original of which is being filed with the Norfolk County Superior Court

Civil Clerk.  This Notice of Removal and a Notice of Filing of Notice of Removal have also been

served this day via first class mail upon Plaintiff's counsel.

                                        Respectfully submitted,

                                        WAL-MART STORES EAST, L.P.

                                        By its attorneys,

I ATTEST THAT THIS DOCUMENT IS A
CERTIFIED PHOTOCOPY OF AN ORIGINAL
ON FILE.                                /s/ Christopher B. Kaczmarek
                                        Christopher B. Kaczmarek (No. 647085)
             Deputy Assistant Clerk   4/25/13
                                        LITTLER MENDELSON, P.C.
                                        One International Place, Suite 2700
                                        Boston, MA 02110
                                        (617) 378-6000 (t)
                                        (617) 737-0052 (f)
                                        ckaczmarek@littler.com

Dated:  April 22, 2013


                      **CERTIFICATE OF SERVICE**

       I hereby certify that on this 22nd day of April 2013, a true copy of the foregoing Notice

of Removal was filed electronically through the Court's CM/ECF system, is available for

viewing and downloading from the ECF system, will be sent electronically to counsel of record

as registered participants identified on the Notice of Electronic Filing and via first class mail to

all non-registered participants identified on the Notice of Electronic Filing, as well as via first

class mail upon the attorney of record for plaintiff:

             Samuel Perkins
             Brody, Hardoon, Perkins & Kesten, LLP
             One Exeter Plaza
             Boston, MA  02116

                             /s/ Christopher B. Kaczmarek
                             Christopher B. Kaczmarek


Firmwide:119625109.1 015602.8370


                                    3

**(TO PLAINTIFF'S ATTORNEY:   PLEASE CIRCLE TYPE OF ACTION INVOLVED:**
**TORT - MOTOR VEHICLE TORT - CONTRACT -**
**EQUITABLE RELIEF - OTHER)**

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.                                      SUPERIOR COURT
                                                  CIVIL ACTION

                                                  NO. CV2013-00027

Diana Lightbody

_____, *Plaintiff(s)*

v.

Wal-Mart Stores East, L.P._____, *Defendant(s)*


## SUMMONS

To the above-named Defendant:  Wal-Mart Stores East, L.P.

Brody, Hardoon, Perkins & Kesten
You are hereby summoned and required to serve upon Samuel Perkins, Esq. of
plaintiff's attorney, whose address is 1 Exeter Plaza, 699 Boylston Street, Boston,
MA 02116
an answer to the complaint which is herewith served upon you, within 20 days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint. You are also required to file your answer to the
complaint in the office of the Clerk of this court at Dedham either before service upon the plaintiff's
attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim
which you may have against the plaintiff which arises out of the transaction or occurrence that is the
subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other
action.

BARBARA J. ROUSE, Esquire
WITNESS,                          , at Boston          the 19th

day of February_____, in the year of our Lord two thousand and Thirteen.

_____ *Clerk.*

NOTES:
1.  This summons is issued pursuant to Rules 4 of the Massachusetts Rules of Civil Procedure.
2.  When more than one defendant is involved, the names of all such defendants should appear in the caption.
    If a separate summons is used for each such defendant, each should be addressed to the particular defendant.

F-33

A true copy Attest:
Deputy Sheriff, Suffolk County

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on .........................................., 20      , I served a copy of

the within summons, together with a copy of the complaint in this action, upon the within-named

defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

.................................................................................................................................................

.................................................................................................................................................

.................................................................................................................................................

Dated:                          , 20        .................................................................................

**N. B.   TO PROCESS SERVER:-**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN**
**THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON**
**DEFENDANT.**

, 20      .

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.                SUPERIOR COURT
                            CIVIL ACTION

                            NO. CV2013-00027

Diana Lightbody
.............................., *Plaintiff*

v.

Wal-Mart Stores East, L.P. ............., *Defendant*

SUMMONS

(Mass. **R. Civ. P.**4)

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) NOCV2013– | Trial Court of Massachusetts Superior Court Department County: Norfolk |
|---|---|---|

| PLAINTIFF(S) Diana Lightbody | DEFENDANT(S) Wal-Mart Stores East, L.P. |
|---|---|

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Samuel Perkins
Brody, Hardoon, Perkins & Kesten, One
Exeter Plaza, BOston, MA 02116, 617-880-7100
Board of Bar Overseers number: 542396

ATTORNEY (If known)

## Origin code and track designation

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X) ·

- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B22 | Employment Discrimination | (F ) | (X )Yes     ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages.  For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
  2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
  3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
  4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
  5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
                                                                   Subtotal $. . . . . . . . . . .
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
F. Other documented items of damages (describe) Emotional Distress- In excess of $50,000
                                                                             $. . . . . . . . . . .
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                                             $. . . . . . . . . . .
                                                               TOTAL $50,000 +

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

                                                               TOTAL $. . . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____     DATE: 1-7-2013

AOTP-8 mtc005-11/99
A.O.S.C. 1-2000



COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.                                  SUPERIOR COURT
                                             C.A. NO.: NOCV2013   3   00027

```
                                )
DIANA LIGHTBODY,                )
                                )            RECEIVED & FILED
              Plaintiff         )            CLERK OF THE COURTS
                                )            NORFOLK COUNTY
       v.                       )               -1-7-13
                                )
WAL-MART STORES EAST, L.P.      )
                                )
              Defendant         )
                                )
```

## COMPLAINT

   Diana Lightbody brings the following complaint against Wal-Mart Stores East,

L.P. ("Walmart") for violation of Mass. Gen. L. ch. 151B, and alleges:

## PARTIES

1. Diana Lightbody is a resident of Connecticut and has been an employee of Wal-Mart

   stores in Massachusetts for nineteen years. She has been a Zone Manager Supervisor

   in Walmart store No. 2103 in Walpole, Norfolk County, Massachusetts, since

   September 28, 2009, and was a Department Manager before that. She currently

   oversees the apparel department in the Walpole Walmart store.

2. Wal-Mart Stores East, L.P. is the owner of Walmart Store No. 2103 in Walpole,

   Norfolk County, Massachusetts ("The Walpole store").

## JURISDICTION

3. Ms. Lightbody originally filed her complaint with the Massachusetts Commission

   Against Discrimination on April 16, 2010 and subsequently obtained the MCAD's

1

permission to remove this matter to Superior Court.

## FACTUAL ALLEGATIONS

4. The senior manager in the Walpole store in 2009-2010 was Store Manager Leo
   Desousa. Just below him in authority were the Assistant Managers, Robin Wilson and
   Walter Budz. As a Zone Manager Supervisor ("ZMS"), Ms. Lightbody was one
   management level below Assistant Managers Wilson and Budz.

5. In order to become a ZMS, Ms. Lightbody attended a week-long training in
   September, 2009 at the Mansfield, Massachusetts Holiday Inn with roughly twenty
   other Walmart managers. The training included sessions on respect for other
   employees and customers, and detailed information on sexual harassment and the
   penalties for violating Walmart rules and regulations.

6. After the training, all management trainees were required to take CBL ("Computer
   Based Learning") tests at their stores, to determine whether they had understood and
   retained the material. One of the CBL's was specifically addressed to sexual
   harassment. All Walmart management staff at the ZMS level and above have had
   comparable training in sexual harassment.

7. In September of 2009, Assistant Manager Robin Wilson was transferred to the
   Walpole store from another Massachusetts Walmart store. Mr. Wilson, who is
   African American, told co-workers at the Walpole store that he was married, and that
   he had a child who lived in the South.

8. Within two weeks of his arrival at the Walpole store, Mr. Wilson asked Ms.
   Lightbody if she was married, and began telling Ms. Lightbody that she looked good,
   that she was "hot." He would roll his tongue around his lips suggestively while

looking at her. He began to touch Ms. Lightbody while talking with her, even though they did not have a professional or personal relationship that would have made touching acceptable.

9.  In late October 2009, Ms. Lightbody told Cathy McComb, the personnel manager of the Walpole store, about Mr. Wilson's inappropriate behavior. Ms. McComb recommended that Ms. Lightbody keep a log of the incidents, and Ms. Lightbody began the log the first week of November 2009.

10. Soon afterward, Ms. Lightbody told Ms. McComb about Wilson's inappropriate behavior. Ms. McComb told Ms. Lightbody that Mr. Wilson had begun to touch her too, during meetings in her office to discuss work schedules.

11. Ms. Lightbody later learned that Bonnie McLaughlin, who was in charge of store invoicing, had had similar experiences with Mr. Wilson. Ms. McComb told Ms. Lightbody that Mr. Wilson had told her that he wanted to put her over his knee and spank her, and that while saying this he had mimicked spanking behavior.

12. Ms. McComb and Bonnie McLaughlin told Ms. Lightbody that while working with them Mr. Wilson touched them and rubbed their arms.

13. From mid-November to mid-December, 2009, Mr. Wilson continued to harass Ms. Lightbody in a variety of ways. He repeatedly told Ms. Lightbody that she was "hot" and told Ms. Lightbody that she "excited" him. He pinched her stomach several times and tried to pinch her buttocks. He told her, Cathy McComb and Alexia, the Head Cashier, that his wife was going to be away for the weekend so he planned to sit naked on the couch. He repeatedly would do things to get Ms. Lightbody's attention and then wiggle his tongue suggestively.

3

14. Ms. Lightbody told Mr. Wilson that she did not appreciate this kind of behavior, but after several weeks of continued harassment, it became clear that Ms. Lightbody was not going to be able to stop him. By this point she was losing sleep, was upset and worried each day we worked the same shift as Mr. Wilson. She also was physically scared of his repeated attempts to touch, grab and pinch her.

15. Ms. Lightbody spoke with Walter Budz, another Assistant Manager at the Walpole store, to discuss her concerns about Mr. Wilson. On December 17, 2009, she filed a written sexual harassment complaint with the store Manager, Leo Desousa.

16. As a result of Ms. Lightbody's complaint against Mr. Wilson, Walmart opened a sexual harassment investigation, known as a "Red Book" investigation. The investigation was conducted by Jennifer Castillo, the Human Resource Market Manager for the nine-store "market" that includes the Walpole store.

17. Ms. Lightbody met with Ms. Castillo during the week following December 17 to discuss the complaint against Mr. Wilson. Ms. Lightbody told Ms. Castillo what Mr. Wilson had done, gave her a copy of the log Ms. Lightbody had kept, and gave her the names of witnesses who could corroborate certain incidents described in the log.

18. About two weeks later, on January 7, 2010, Ms. Castillo scheduled a meeting with Ms. Lightbody to discuss the results of her investigation. Also attending the meeting were Walpole store manager Leo Desousa and Kevin Kennedy, a district Loss Prevention Manager. Ms. Lightbody asked why Mr. Kennedy was there, and was told he attended meetings when there was a potential lawsuit.

19. At the meeting, Ms. Castillo told Ms. Lightbody Walmart had "closed" the investigation, and that Mr. Wilson would remain working as Assistant Manager as

4

before. Ms. Lightbody asked whether there were going to be any consequences for Mr. Wilson. Ms. Castillo responded that the company would not punish him because he had denied any significant wrongdoing.

20. Ms. Lightbody learned later that Walmart management told Mr. Wilson to repeat the computerized CBL test on sexual harassment--a test he had taken at least once before.

21. Ms. Castillo said at the Meeting January 7, 2010 that Mr. Wilson had admitted some of the inappropriate behavior the other women had accused him of, but had denied what Ms. Lightbody had said he had done to her. Ms. Castillo said that Mr. Wilson had admitted telling Ms. McComb that he wanted to lay her across his knees and spank her. Ms. Castillo said Mr. Wilson had denied grabbing Ms. Lightbody or trying to.

22. Ms. Castillo's presentation at the January 7 meeting demonstrated that Walmart had accepted Mr. Wilson's denials concerning Ms. Lightbody's complaint at face value, without even a superficial investigation, and despite Wilson's admissions that he had harassed other female employees.

23. Ms. Castillo's decision to accept Wilson's denial convinced Ms. Lightbody that Walmart management was telling her the company believed she had fabricated her complaint. During the January 7 meeting, Ms. Castillo provided further insight into Walmart's thinking when she asked Ms. Lightbody whether Ms. Lightbody had "led him on," and revealed that during its investigation into her complaint Walmart had looked into whether Ms. Lightbody was "a troublemaker."

24. After hearing Ms. Castillo's presentation at the January 7 meeting, Ms. Lightbody was extremely upset. She had worked for sixteen years at Walmart, and had risen to a

5

management position. She expected that the company would do a real investigation of sexual harassment complaints by three employees, which included, in her case, repeated physical contact, grabbing, and sexually suggestive comments and gestures. In response, the company had asked if she had led Mr. Wilson on, had not interviewed witnesses who could corroborate what Ms. Lightbody had said, had instead investigated whether she was a "troublemaker," and had not imposed any discipline on Mr. Wilson.

25. Ms. Lightbody knew from her management training that Mr. Wilson's behavior was a violation of company policy, and should have led to a much more serious sanction than repeating a CBL unit. Ms. Lightbody was particularly upset that Walmart management had decided she had fabricated her complaint, even though they had not interviewed the witnesses she told them about. Finally, she was upset that Walmart had decided to have Ms. Lightbody work the same schedule as before with Mr. Wilson, after effectively telling her they thought she had lied to get him in trouble.

26. On January 11, 2010, four days after Ms. Lightbody's meeting with Mr. Castillo, she learned from Alyssha Dellis, another ZMS, that Ms. Dellis had witnessed Mr. Wilson grabbing and pinching Ms. Lightbody's stomach at least twice. Ms. Dellis said she was nervous about getting Mr. Wilson in trouble, but agreed to meet with Walter Budz, the Assistant Manager.

27. On the evening of January 11, 2010, Ms. Dellis and Ms. Lightbody met with Mr. Budz, who asked Ms. Dellis what she had seen. Ms. Dellis told Mr. Budz that she had seen Mr. Wilson grab and pinch Ms. Lightbody. Ms. Dellis told Budz that she was worried Mr. Wilson would be fired because of what she was saying. Mr. Budz said he

would talk with Store Manager Leo Desousa about what Ms. Dellis had said.

28. Ms. Lightbody waited several days, and then asked Ms. Dellis whether Mr. Desousa had spoken to her about the information Ms. Dellis had provided Butz on January 11. Ms. Dellis said no one had asked her about the information she had given Mr. Budz about Mr. Wilson on January 11.

29. Early the morning of January 13, 2010, when Mr. Wilson and Ms. Lightbody were the only management personnel in the store, Mr. Wilson paged Ms. Lightbody and asked her to come to the management office to speak with him. Given Mr. Wilson's behavior and Walmart's recent decision to take his word over hers, despite corroboration of her accusation by at least one witness, Ms. Lightbody chose not to meet alone with Mr. Wilson in the management office. Instead, she called him on the phone from the floor.

30. Later on January 13, Ms. Lightbody spoke with Store Manager Leo Desousa about Mr. Wilson. She told Mr. Desousa that Ms. Dellis had confirmed what Ms. Lightbody had said about Mr. Wilson grabbing her, and that Assistant Manager Budz had heard Ms. Dellis' account.

31. In providing this additional evidence to Store Manager Desousa on January 13, 2010, Ms. Lightbody wanted and expected Mr. Desousa to treat this new information seriously. She expected him at least to decide that she had been telling the truth about Mr. Wilson, and she hoped Mr. Desousa would use this new evidence to reopen the investigation into her harassment complaint against Mr. Wilson.

32. Instead of inquiring about the new information that proved Mr. Wilson had harassed Ms. Lightbody and lied to Walmart investigators, Mr. Desousa instead focused on her

7

response to Mr. Wilson's page earlier that day. Mr. Desousa said he'd heard that Ms.

Lightbody didn't want to meet alone with Mr. Wilson in the management office, and

asked, "Why didn't you go?" Ms. Lightbody said she was scared of what Mr. Wilson

might do, and was also scared that if anything did happen, Walmart would choose to

believe Mr. Wilson's version and reject hers.

33. Mr. Desousa said, "I'm sorry you feel that way. Is this the way it's going to be

forever?"

34. Based upon her interaction with Mr. Desousa, and Walmart's failure to reopen its

investigation into her complaints against Mr. Wilson, Ms. Lightbody believes that

Store Manager Desousa did not tell Ms. Castillo that Ms. Dellis had corroborated Ms.

Lightbody's complaint, and believes that Mr. Desousa took no action to reopen the

investigation or determine whether Wilson had lied to investigators.

35. The outcome of Walmart's investigation demonstrates that Walmart had no interest in

finding out any information that might obligate the company to terminate Mr. Wilson

or disrupt operation of the Walpole store. Jennifer Castillo chose not to interview

witnesses who would have confirmed that Mr. Wilson had done just what Ms.

Lightbody accused him of. When Ms. Lightbody told Mr. Desousa there were

witnesses who would prove what she said, Mr. Desousa didn't bother to check this

information, reopen the investigation, or even tell Ms. Lightbody that he now

believed what she had alleged. Instead, Store Manager Desousa in substance told Ms.

Lightbody that she should forget what had happened and accept that Mr. Wilson

could do what he wanted. Walmart management deliberately curtailed its

investigation, "closed" it prematurely, and refused to consider additional evidence

that proved Mr. Lightbody's complaint.

36. Ms. Lightbody's case is not the only occasion on which management at the Walpole store decided to ignore obviously unlawful sexual harassment. In early March 2010, a young male maintenance worker, Jaison, dropped his pants to the ground in front of a young female cashier, exposing himself. He claimed it was an accident, but the circumstances—including the fact that he was not wearing any underwear--show that it was deliberate. The head cashier, Alexia, complained to Leo Desousa about the incident. Mr. Desousa told Mr. Wilson to take care of the problem, and Mr. Wilson said he had—by telling Jaison to wear underwear from then on. Mr. Wilson and Mr. Desousa both laughed, and it was obvious that they did not consider the incident significant.

37. Despite Walmart's policy against sexual harassment, and its supposed investigation of Mr. Wilson's behavior, the net result of Walmart's investigation was that Mr. Wilson knew he could get away with sexual harassment. Following Ms. Lightbody's complaint and Walmart's deliberately ineffective investigation, Mr. Wilson grabbed and hugged another employee who works for Ms. Lightbody, Amy Shaughnessy, shocking her and scaring her.

38. Walmart's investigation into Mr. Lightbody's complaint was carefully tailored to further Walmart's managerial convenience. Company investigators chose to believe petty complaints against Mr. Wilson—complaints that would leave him in place with nothing more than a warning—and disbelieve Ms. Lightbody's complaint, which normally would lead to termination of an Assistant Manager.

39. Walmart's handling of Ms. Lightbody's harassment complaints violated M.G.L. c.

9

151B, § 4 in a particularly outrageous and egregious way. The investigation of her complaint, which under the law is supposed to protect her and her female co-workers from harassment, was not designed to determine the truth or to impose appropriate discipline. To the contrary, it was designed to notify Ms. Lightbody and other female employees that complaints that might force Walmart to replace management personnel would not be investigated competently or thoroughly, and would end with the victim being accused of "leading on" the harasser or being a "troublemaker."

40. As a result of Walmart's violations of ch 151B, § 4, Ms. Lightbody has suffered severe emotional distress.

## COUNT I

41. Walmart's behavior, as alleged above, violated its duties to Ms. Lightbody under M.G.L. c. 151B, § 4.

42. Walmart's perversion of the investigative process, and use of that process to deter complaints and punish the complainant for making allegations that might lead to termination of an Assistant Manager, was an egregious and outrageous violation of ch. 151B, § 4, justifying punitive damages.

WHEREFORE, Diana Lightbody demands judgment against Walmart awarding her compensatory damages, punitive damages, interest and attorney's fees.

JURY DEMAND

THE PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES.

Respectfully submitted,

Plaintiff,
DIANA LIGHTBODY,
By her attorney,

Samuel Perkins, BBO # 542396
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100
(617) 880-7171
sperkins@bhpklaw.com

Dated: January 7, 2013

11

## Commonwealth of Massachusetts
### County of Norfolk
### The Superior Court

CIVIL DOCKET # NOCV2013-00027-A
Courtroom CtRm 10

RE: Lightbody v Wal-Mart Stores East, L.P.
TO:

Samuel Perkins, Esquire
Brody Hardoon Perkins & Kesten
1 Exeter Plaza
12th floor
Boston, MA 02116

### SCHEDULING ORDER FOR F TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated, and case shall be resolved and judgment shall issue **10/29/2014**.

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | 04/07/2013 | 04/07/2013 | |
| Response to the complaint filed (also see MRCP 12) | | 05/07/2013 | |
| All motions under MRCP 12, 19, and 20 | 05/07/2013 | 06/06/2013 | 07/06/2013 |
| All motions under MRCP 15 | 05/07/2013 | 06/06/2013 | 07/06/2013 |
| All discovery requests and depositions served and non-expert depositions completed | 11/03/2013 | | |
| All motions under MRCP 56 | 12/03/2013 | 01/02/2014 | |
| Final pre-trial conference held and/or firm trial date set | | | 05/02/2014 |
| Case shall be resolved and judgment shall issue by **10/29/2014** | | | **10/29/2014** |

- The final pre-trial deadline is <u>not the scheduled date of the conference.</u>
- You will be notified of that date at a later time.
- Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

Dated: 01/07/2013

Walter F. Timilty
Clerk of the Court

Telephone: (781) 326-1600

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.                                  SUPERIOR COURT
                                             C.A. NO.: NOCV2013-

_____
                              )
DIANA LIGHTBODY,              )
                              )
            Plaintiff         )
                              )
        v.                    )
                              )
WAL-MART STORES EAST, L.P.    )
                              )
            Defendant         )
_____)

## NOTICE OF APPEARANCE OF SAMUEL PERKINS

Please enter my appearance on behalf of the Plaintiff, DIANA LIGHTBODY, in the

above-captioned matter.

Respectfully submitted,

Samuel Perkins, BBO # 542396
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100
(617) 880-7171
sperkins@bhpklaw.com

Dated:  January 7, 2013

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.                                   SUPERIOR COURT DEPARTMENT
                                                  OF THE TRIAL COURT

DIANA LIGHTBODY,

                Plaintiff,                        C.A. NO. NOCV2013-00027

        v.

WAL-MART STORES EAST, L.P.

                Defendant.

### NOTICE OF FILING OF NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, defendant Wal-Mart Stores East, L.P., by

its undersigned counsel, hereby gives notice to the Superior Court of Norfolk County,

Massachusetts, and to the attorney of record for Plaintiff Diana Lightbody that, on April 19,

2013, Defendant filed a Notice of Removal, thereby removing this Action to the United States

District Court for the District of Massachusetts.  A certified copy of the Notice of Removal is

attached hereto.

                        Respectfully submitted,

                        WAL-MART STORES EAST, L.P.

                        By its attorneys,

                        Christopher B. Kaczmarek (No. 647085)
                        LITTLER MENDELSON, P.C.
                        One International Place, Suite 2700
                        Boston, MA 02110
                        (617) 378-6000 (t)
                        (617) 737-0052 (f)
                        ckaczmarek@littler.com

Dated:  April 22, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of April 2013, a true copy of the foregoing Notice

of Filing of Notice of Removal was served via first class mail upon the attorney of record for

plaintiff:

> Samuel Perkins
> Brody, Hardoon, Perkins & Kesten, LLP
> One Exeter Plaza
> Boston, MA  02116

Christopher B. Kaczmarek

Firmwide:119625338.1 015602.8370

2

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
DIANA LIGHTBODY

**DEFENDANTS**
WAL-MART STORES EAST, L.P.

**(b)** County of Residence of First Listed Plaintiff    Norfolk
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Samuel Perkins
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Plaza
Boston, MA  02116   (617) 880-7100

Attorneys *(If Known)*
Christopher B. Kaczmarek
Littler Mendelson, P.C.
One International Place, Suite 2700
Boston, MA  02110   (617) 378-6000

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                 *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | **IMMIGRATION** | |
| | | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | |
| | | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1332, 1441, and 1446

Brief description of cause:
Plaintiff alleges employment discrimination in the form of sexual harassment against her employer.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $75,000.00+

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
April 22, 2013

SIGNATURE OF ATTORNEY OF RECORD
/s/ Christopher B. Kaczmarek

FOR OFFICE USE ONLY

RECEIPT #                    AMOUNT              APPLYING IFP              JUDGE              MAG. JUDGE

JS 44 Reverse (Rev. 12/12)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)  Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)  County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)  Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.  Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.  Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.  Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.  Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.  Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.  Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.  Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.


American LegalNet, Inc.
www.FormsWorkFlow.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)   Lightbody v. Wal-Mart Stores East, L.P.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   _____   I.   410, 441, 470, 535, 830*, 891, 893, 894, 895, R.23, REGARDLESS OF NATURE OF SUIT.

   __X__   II.   110, 130, 140, 160, 190, 196, 230, 240, 290, 320, 362, 370, 371, 380, 430, 440, 442-446, 710, 720, 730, 740, 790, 820*, 840*, 850, 870, 871.

   _____   III.   120, 150, 151, 152, 153, 195, 210, 220, 245, 310, 315, 330, 340, 345, 350, 355, 360, 365, 368, 385, 400, 422, 423, 450, 460, 462, 463, 465, 480, 490, 510, 530, 540, 550, 555, 610, 620, 625, 630, 640, 650, 660, 690, 791, 810, 861-865, 875, 890, 892, 900, 950.

   *Also complete AO 120 or AO 121. for patent, trademark or copyright cases.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES ☐   NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

   YES ☐   NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES ☐   NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES ☐   NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES ☒   NO ☐

   A.   If yes, in which division do all of the non-governmental parties reside?

   Eastern Division ☒      Central Division ☐      Western Division ☐

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

   Eastern Division ☐      Central Division ☐      Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES ☐   NO ☒

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME   Christopher B. Kaczmarek

ADDRESS   Littler Mendelson, P.C., One International Place, Suite 2700, Boston, MA  02110

TELEPHONE NO.   617.378.6000

(CategoryForm4-4-11.wpd - 4/4/11)


American LegalNet, Inc.
www.FormsWorkFlow.com

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.                                    SUPERIOR COURT
                                               C.A. NO.: NOCV2013- 13  00027

DIANA LIGHTBODY,                      )
                                      )
                Plaintiff             )
                                      )
         v.                           )
                                      )
WAL-MART STORES EAST, L.P.            )
                                      )
                Defendant             )

### NOTICE OF APPEARANCE OF SAMUEL PERKINS

    Please enter my appearance on behalf of the Plaintiff, DIANA LIGHTBODY, in the

above-captioned matter.

                          Respectfully submitted,

                          Samuel Perkins, BBO # 542396
                          BRODY, HARDOON, PERKINS & KESTEN, LLP
                          One Exeter Plaza
                          Boston, MA 02116
                          (617) 880-7100
                          (617) 880-7171
                          sperkins@bhpklaw.com

Dated:  January 7, 2013

I ATTEST THAT THIS DOCUMENT IS A
CERTIFIED PHOTOCOPY OF AN ORIGINAL
ON FILE.

Deputy Assistant Clerk