UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIANA LIGHTBODY, ) | |
| PLAINTIFF ) | |
| v. ) | CIVIL ACTION NO. 1:13-cv-10984-DJC |
| ) | |
| WAL-MART STORES EAST, L.P., ) | |
| DEFENDANT ) | |

**DEFENDANT WAL-MART STORES EAST, L.P.'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Diana Lightbody alleges that she was subjected to a hostile work environment based on her sex while working at Walmart's Walpole, Massachusetts location.  Specifically, she claims that another manager complimented her looks (e.g., he said she was "hot"), licked his lips at her, pinched her on the stomach, and told her he was going home to sit on the coach naked. Even if these allegations are true, this conduct, although boorish, is not sufficiently severe or pervasive to rise to the level of actionable harassment under Massachusetts law.  Moreover, there is no evidence that this conduct interfered with Lightbody's work performance in any way. Therefore, the Court should enter summary judgment in favor of defendant Walmart Stores East, L.P. ("Walmart" or the "Company").

## I.    BACKGROUND

In June of 1994, Lightbody began working at Walmart's Walpole, Massachusetts location as a sales associate.  Statement of Material Facts ("SMF") ¶ 1.  Over the years, she received a number of promotions, culminating in her elevation to the position of Zone Merchandise Supervisor in 2009.  SMF ¶ 2.  In this position, Lightbody was responsible for overseeing the

apparel department in the Walpole store, which includes jewelry, shoes, and accessories.  SMF ¶ 3.  She reported to Assistant Manager Kerrie Ortiz.  SMF ¶ 4.

During the course of her employment with Walmart, Lightbody was made aware of, and received training concerning, various Walmart policies, including the Company's Discrimination and Harassment Prevention Policy.  SMF ¶ 5.  That policy encourages Associates[1] to report any harassing behavior to a salaried member of management or the Company's toll-free Global Ethics hotline.  SMF ¶ 6.

### A.    Walmart Investigates Lightbody's Initial Complaint Of Harassment

In October 2009, Robin Wilson began working at the Walpole store as an Assistant Manager.  SMF ¶ 7.  Wilson was not Lightbody's direct supervisor.  Instead, he was responsible for operations, which included the cash registers at the front of the store, as well as the back rooms where merchandise is stored.  SMF ¶ 8.

On December 17, 2009, Lightbody submitted a handwritten letter to Leo Desousa, the Store Manager in Walpole.  SMF ¶ 9.  In her letter, Lightbody identified various instances of inappropriate behavior by Wilson towards her in the preceding month.  Specifically, Lightbody asserted that in the preceding month Wilson had: (1) told her four times that she was "hot" and once that she "excite[s] him"; (2) pinched her on the stomach twice; (3) tried to pinch her buttocks on one occasion (but did not actually do so); (4) told her and others that he planned to sit on his couch naked all weekend; (5) once asked her if she needed lip gloss and then licked his lips; and (6) stared at her once and then licked his lips.  SMF ¶¶ 10-11.  This was the first time Walmart had received a complaint about Wilson's conduct in the workplace.  SMF ¶ 12.

---

[1] Walmart refers to its employees as Associates.

The very next day (December 18, 2009), Walmart opened an investigation of these allegations.  SMF ¶ 13.  Walmart assigned Jennifer Castillo, the Company's Market Human Resources Manager, as the lead investigator.  SMF ¶ 14.  Three days later, on December 21, 2009, Castillo interviewed two Associates from the Walpole store.  SMF ¶ 15.  The next day, Castillo met with Lightbody, who reiterated the concerns in her letter to Desousa.  SMF ¶ 16.

Four days later, Castillo interviewed Wilson, who denied the bulk of Lightbody's allegations.  SMF ¶ 17.  Indeed, the only allegation made by Lightbody that Castillo was able to corroborate was Wilson's statement about "sitting naked on the couch."  SMF ¶ 18.  Castillo's investigation also revealed that Wilson had made an inappropriate comment concerning spanking to a different Associate:  Wilson said that the Associate had been "bad" and therefore he may need to spank her.  SMF ¶ 19.

Based on these findings, on January 7, 2010 – just three weeks after Lightbody submitted her letter to Desousa – Walmart disciplined Wilson by giving him a Decision-Making Day Coaching.  SMF ¶ 20.  The Decision-Making Day Coaching (which is one step short of termination) put Wilson on notice that any subsequent violation of Walmart policy would result in his immediate termination.  SMF ¶ 21.  Walmart also required Wilson to undergo additional training regarding Walmart's policy against sexual harassment and reminded him that he was expected to comport himself in a professional manner at all times.  SMF ¶ 22.

### B.   Walmart Investigates Lightbody's Second Complaint Of Harassment

In subsequent months, Lightbody continued to work at Walmart without incident. Indeed, on May 15, 2010, Lightbody received a rating of "exceeds expectations" on her performance evaluation from her manager, Kerrie Ortiz.  SMF ¶ 23.  Lightbody did not contact

Castillo, or anyone else at Walmart, with any additional concerns about Wilson until June 3, 2010.[2]  SMF ¶ 24.

On June 3, 2010, almost six months after Wilson was disciplined, Lightbody informed Walmart that Wilson recently had stared at her breasts.  SMF ¶ 25.  In response, on June 7th, Walmart suspended Wilson pending an investigation.  SMF ¶ 26.   On June 11th, Castillo interviewed four Associates, including Lightbody and Ortiz, who corroborated Lightbody's allegation that Wilson had stared at her breasts on one occasion.  SMF ¶¶ 27-28.  In addition, another Associate informed Castillo that Wilson had made inappropriate comments to her (but not to Lightbody)[3] and had grabbed her on the waist on at least one occasion.  SMF ¶ 29.

In light of these revelations, Walmart terminated Wilson's employment effective June 23, 2010.  SMF ¶ 30.  Lightbody continued working at Walmart for three-and-a-half more years, until December 2013.  SMF ¶ 31.  She did not experience any sexual harassment after the termination of Wilson's employment.  SMF ¶ 32.

Nonetheless, Lightbody asserts a claim of sexual harassment under Massachusetts General Laws Chapter 151B.  Walmart now moves for summary judgment.

## II.    ARGUMENT

Summary judgment is appropriate where, as here, the pleadings, "depositions . . . affidavits . . . interrogatory answers or other materials" show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  As discussed in detail below, summary judgment is appropriate because Lightbody cannot offer evidence to support her assertion that she was subjected to a hostile work environment based on her sex.  See Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 83 (1st Cir. 2006) ("summary

---

[2] Lightbody claims that, in the interim, Wilson called her "babe" and told her she was "looking good" and "looked nice".  She did not report these allegations to Walmart.
[3] Those statements included:  "You're yummy;" "You're beautiful," and "I could just eat you up".

judgment is an appropriate vehicle for policing the baseline for hostile environment claims" (internal citation and punctuation omitted)).

### A.    Lightbody Cannot State A Claim For Sexual Harassment

To prevail on her claim for sexual harassment under Massachusetts General Laws Chapter 151B, Lightbody must prove, among other things, that Wilson's conduct was "both objectively and subjectively offensive." Muzzy v. Cahillane Motors, Inc., 434 Mass. 409, 412 n.2 (2001) (internal citation omitted). To establish that Wilson's alleged conduct was objectively offensive, Lightbody must establish that such conduct "was sufficiently severe and pervasive to interfere with a reasonable person's work performance . . . [as] considered from the view of a reasonable person in [her] position." Id. at 411-12 (internal citations and punctuation omitted). Because Lightbody cannot satisfy this standard, the Court should enter summary judgment for Walmart.

First, Lightbody cannot – as she must in order to state a claim – "demonstrate that she worked in a sexually hostile environment *that unreasonably interfered with her work performance*." Muzzy, 434 Mass. at 411 (emphasis added). Lightbody only complained of (a) a handful of incidents that occurred in November and December 2009, and (b) one incident that occurred in June of 2010. SMF ¶¶ 9-12, 16, 24-25. She has not come forward with any evidence suggesting that these incidents (none of which involved Ortiz, her direct supervisor) interfered with her ability to work at Walmart. To the contrary, she received an excellent performance evaluation in May of 2010. SMF ¶ 23. Moreover, she continued working for Walmart for another three-and-a-half years after the termination of Wilson's employment in June 2010. SMF ¶ 31. Because there is no evidence that Wilson's conduct interfered with her work performance, summary judgment is appropriate. See Pomales, 447 F.3d at 84 (affirming the entry of summary judgment for the employer because plaintiff "presented no proof that [the alleged harasser's]

conduct negatively affected her ability to work as a CTI sales consultant" (citing Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 46 (1ˢᵗ Cir. 2003)).  See also Ponte v. Steelcase, Inc., 741 F.3d 310, 321 (1st Cir. 2014) (affirming the entry of summary judgment for the employer because the alleged harassment did not interfere with the plaintiff's performance of her job duties).

Second, viewed objectively, the alleged actions of Wilson were not sufficiently "severe or pervasive" to rise to the level of actionable sexual harassment.  See Ponte, 741 F.3d at 320 (noting that, to be actionable, harassment must be "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive work environment"); Prescott v. Higgins, 538 F.3d 32, 42 (1ˢᵗ Cir. 2008) ("Under Massachusetts law, a hostile work environment is one that is 'pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, [such that it] poses a formidable barrier to the full participation of an individual in the workplace.'" (internal citation omitted)).

Lightbody complained that, in November and December 2009, Wilson had: (1) told her four times that she was "hot" and once that she "excite[s] him"; (2) pinched her on the stomach twice; (3) tried to pinch her buttocks on one occasion (but did not actually do so); (4) told her and others that he planned to sit on his couch naked all weekend; (5) once asked her if she needed lip gloss and then licked his lips; and (6) stared at her once and then licked his lips.  SMF ¶¶ 9-11.  Approximately six months later, on June 3, 2010, she complained that Wilson had stared at her breasts on one occasion.  SMF ¶ 25.  She also claims that, in the interim, Wilson called her "babe" and told her she was "looking good" and "looked nice;" although she did not

complain about these alleged comments to Walmart.[4]  SMF ¶ 24.

None of this conduct was physically threatening in any way.  See Lee-Crespo, 354 F.3d at 40, 46 (finding no sexual harassment where the plaintiff's supervisor said the plaintiff "looked very sexy in skirts," hugged her from behind, and made comments about the sexual preferences of other employees because, although this conduct was "occasionally discomforting or mildly humiliating," it "was never physically threatening").  In addition, neither Wilson's alleged pinching of Lightbody's stomach, nor his alleged licking of his lips, are the types of "inherently sexual behavior" that give rise to an actionable claim for sexual harassment under Massachusetts law.  See Allard v. Citizens Bank, 608 F. Supp. 2d 160, 168 (D. Mass. 2009) ("a man's habit of adjusting the groin area of his pants is not an inherently sexual act").

Moreover, although Wilson's comments regarding Lightbody's appearance may have made her uncomfortable, "discomfort is not the test."  Ponte, 741 F.3d at 320 (finding no sexual harassment where plaintiff's supervisor put his "arm around her shoulder as he insisted on driving her alone back to the hotel after work").  Further, given the relatively limited number of incidents of harassment, Lightbody cannot show that her workplace was "*pervaded* by harassment or abuse."  Prescott, 538 F.3d at 42 (emphasis added).

Viewed together in the light most favorable to Lightbody, the above-referenced actions simply do not rise to the level of severity or frequency required to constitute hostile work environment harassment.  Therefore, the Court should enter summary judgment for Walmart.[5]

---

[4]  Although Walmart assumes, for purposes of summary judgment only, that Wilson made these comments, Lightbody's decision not to complain about them suggests that she did not find them offensive and/or that they did not alter the conditions of her employment in any way.

[5]  An employer cannot be held liable for any alleged deficiencies in its investigation of an internal complaint of harassment where the underlying claim of harassment is without merit.  See Keeler v. Putnam Fiduciary Trust Co., 238 F.3d 5, 13 (1st Cir. 2001).  Accordingly, because Lightbody failed to establish that she was subjected to a hostile work environment based on her sex, the Court should dismiss her claim that Walmart's investigation of her complaints was inadequate.

See, e.g., Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430-31 (7th Cir. 1995) (holding that the following incidents spread over seven months did not constitute sexual harassment: supervisor called plaintiff a "pretty girl"; once, when plaintiff was wearing a leather skirt, her supervisor made a grunting sound that sounded like "um um um"; once when the plaintiff commented on how hot his office was, supervisor raised his eyebrows and said "[n]ot until you stepped your foot in here"; once when announcement "[m]ay I have your attention" was broadcast over public address system, supervisor said "[y]ou know what that means, don't you?  All pretty girls run around naked"; and when employee asked supervisor whether he had gotten his wife Valentine's Day card, supervisor responded that he should because it was lonely in his hotel room and all he had for company was his pillow and then supervisor looked ostentatiously at his hand and gesture was intended to suggest masturbation).

### B.      Walmart Is Not *Per Se* Liable For Wilson's Conduct

Lightbody, relying on College-Town, Division of Interco, Inc. v. MCAD, 400 Mass. 156 (1987), seeks to hold Walmart *per se* liable for the alleged actions of Wilson because he was a supervisor.  In College-Town, the Massachusetts Supreme Judicial Court held that, in the context of that case, the employer should be held liable for a "supervisor's own harassment of subordinates." Id. at 167.  Contrary to Lightbody's argument, College-Town should not be read broadly to create a *per se* rule of employer liability for sexual harassment by a supervisor.

As other members of this Court have acknowledged, the better reading of College-Town is that *per se* liability is appropriate only where the supervisor harasses his own subordinate employees.  See Saad v. Stanley St. Treatment & Res., Inc., No. 92-11434-DPW, 1994 WL 846911, at *8 (D. Mass. May 20, 1994) (Woodlock, J.) ("I reject the argument that an employer is *per se* liable for the acts of supervisory employees who are not acting in their supervisory role when dealing with another employee.").  See also Rosemond v. Stop & Shop Supermarket Co.,

456 F. Supp. 2d 204, 216 (D. Mass. 2006) (rejecting the argument that an employer is *per se* liable for harassment committed by any employee who holds any supervisory role with regard to any other employee).  In this case, because Ortiz, not Wilson, was Lightbody's direct supervisor, Walmart should not be held *per se* liable for Wilson's alleged conduct.  <u>See Saad</u>, 1994 WL 846911, at *8.

Instead, the Court should consider the actions Walmart took in response to Lightbody's complaint of discrimination on December 17, 2009:  the Company opened an investigation the very next day, and within four days (in the midst of the holiday shopping season) Castillo had interviewed Lightbody and two other Associates.  SMF ¶¶ 13-16.  A few days later, Castillo met with Wilson.  SMF ¶ 17.  On January 7, 2010 – just three weeks after Lightbody complained about Wilson – Walmart disciplined Wilson by giving him a Decision-Making Day Coaching.[6] SMF ¶ 20.  By any measure, Walmart's response was prompt.  <u>See, e.g.</u>, <u>Foley v. Proctor & Gamble Distrib. Co.</u>, 01-11314-RWZ, 2003 WL 21696544, at *2 (D. Mass. July 21, 2003) (Zobel, J.) ("Remedial action within a month of plaintiff's complaint is, by all standards, prompt.").

Walmart's response also was effective:  other than some off-hand comments that Lightbody chose not to complain about, Wilson did not bother Lightbody in the subsequent months.  Moreover, when Walmart received notice in June 2010 that Wilson's behavior had regressed, the Company promptly terminated his employment.  SMF ¶¶ 25-30.  In light of the

---

[6] Although Lightbody might have preferred that Walmart terminate the employment of Wilson (who did not have any recent disciplinary history) at the conclusion of Castillo's investigation in January 2010, an employer "is not required to respond with the precise remedy that the harassment victim wishes or asks for."  <u>Modern Cont'l/Obayashi v. MCAD</u>, 445 Mass. 96, 109 (2005).  <u>See Cerqueira v. Corning Net Optix</u>, 03-10306-DPW, 2004 WL 1932758, at *6 (D. Mass. Aug. 13, 2004) (Woodlock, J.) (observing that the "chief measure of adequacy of an employer's response is not the victim's own personal sense of justice, but rather – particularly where there is no prior history of workplace harassment – whether the behavior that gave rise to the complaint has ceased and does not threaten to reoccur" (internal citations omitted)).

prompt and effective actions that Walmart took in response to Lightbody's concerns, the Court should enter summary judgment for Walmart.

### III.   CONCLUSION

For the foregoing reasons, there are no genuine disputes of material fact and Walmart is entitled to judgment as a matter of law on Lightbody's sexual harassment claim.  Therefore, the Court should grant Walmart's motion for summary judgment and dismiss this claim.

Respectfully submitted,

**WAL-MART STORES EAST, L.P.**

By its attorneys,

/s/ Christopher B. Kaczmarek
Christopher B. Kaczmarek (BBO No.  647085)
Vanessa K. Hackett (BBO No.  673493)
**LITTLER MENDELSON, P.C.**
One International Place
Suite 2700
Boston, MA  02110
Tel:  617.378.6000
Fax:  617.737.0052
ckaczmarek@littler.com
June 26, 2014                                  vhackett@littler.com

## CERTIFICATE OF SERVICE

I, Christopher B. Kaczmarek, hereby certify that on this 26th day of June 2014, the

foregoing document, filed through the ECF system, will be sent electronically to the registered

participants as identified on the Notice of Electronic Filing and paper copies will be delivered via

first class mail to those indicated as non-registered participants.


/s/ Christopher B. Kaczmarek
Christopher B. Kaczmarek

Firmwide:127486027.1 049439.1018