UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIANA LIGHTBODY, ) | |
| ) | |
| Plaintiff ) | |
| ) | C.A.NO. 1:13-CV-10984-DJC |
| v. ) | |
| ) | |
| WAL-MART STORES EAST, L.P. ) | |
| ) | |
| Defendant ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

The defendant argues that Ms. Lightbody's sexual harassment claims fail as a

matter of law because her job performance did not decline (Defendant's Memorandum,

Doc 19 p. 4-6[1]), because Assistant Store Manager Robin Wilson's harassing behavior

was not severe or pervasive enough to constitute sexual harassment  (Defendant's

Memorandum, Doc 19 p. 6-8), and because Wal-Mart is not liable for Mr. Wilson's

sexually harassing behavior  (Defendant's Memorandum, Doc 19 p. 8-10). Each of these

arguments is legally insupportable, and summary judgment must be denied.

## II.    ARGUMENT

### A.     Ms. Lightbody's Claim Does Not Require Proof That Her
### Performance Declined.

Wal-Mart argues that "Because there is no evidence that Wilson's conduct

interfered with her work performance, summary judgment is appropriate." (Defendant's

---

[1] Page references are to the document number and page from the USDC Docket.

Memorandum, Doc 19, p. 5.) The defendant supports this argument by submitting Ms.

Lightbody's performance evaluation, which shows that despite harassment by Mr. Wilson

and a deliberately inadequate investigation and rejection of Ms. Lightbody's claim, she

maintained a high level of performance. (Id. *See* Plaintiff's Response to Defendant's

Statement of Material Facts, No. 18.) Wal-Mart mis-states the elements of a sexual

harassment claim, and completely fails to address Ms. Lightbody's principal claim—i.e.,

that Wal-Mart management's deliberate failure to investigate Mr. Wilson's harassment

and its failure to impose appropriate discipline violated M.G.L. c. 151B and caused her

extreme psychological distress by forcing her to endure an ongoing work relationship

with her harasser that was intimidating, hostile and sexually offensive.

The Massachusetts definition of sexual harassment states:

18. The term "sexual harassment" shall mean sexual advances, requests for sexual
favors, and other verbal or physical conduct of a sexual nature when (a)
submission to or rejection of such advances, requests or conduct is made either
explicitly or implicitly a term or condition of employment or as a basis for
employment decisions; (b) such advances, requests or conduct have the purpose
or effect of unreasonably interfering with an individual's work performance by
creating an intimidating, hostile, humiliating or sexually offensive work
environment. Discrimination on the basis of sex shall include, but not be limited
to, sexual harassment.

M.G.L. c. 151B, § 1(18).

Massachusetts precedent confirms that the creation of "an intimidating, hostile,

humiliating or sexually offensive work environment," is, standing alone, sufficient to

"have the . . . effect of unreasonably interfering with an individual's work performance."

The plaintiff is not required to prove that the quality of her work has deteriorated. To the

contrary, the plaintiff must only demonstrate that the hostile environment negatively

affected the conditions of her employment in a way that would interfere with a reasonable

person's performance. As stated by the Supreme Judicial Court:

> [A]n employee who alleges sexual harassment must show that the employer's conduct was intentionally or in effect hostile, intimidating, or humiliating *to the plaintiff* in a way which affected her performance or the conditions of her employment. See G.L. c. 151B, § 1(18). See also *College-Town, supra* at 162, 508 N.E.2d 587.

*Ramsdell v. W. Massachusetts Bus Lines, Inc.*, 415 Mass. 673, 678-79, 615 N.E.2d 192, 196 (1993).

> To prove a hostile work environment claim, "the plaintiff [must] demonstrate that [he] worked in a sexually hostile environment that unreasonably interfered with [his] work performance. To sustain that burden, [the plaintiff must] establish that the conduct alleged was sufficiently severe and pervasive to interfere with a reasonable person's work performance." *Muzzy v. Cahillane Motors, Inc.,* 434 Mass. 409, 411, 749 N.E.2d 691 (2001).

*Salvi v. Suffolk Cnty. Sheriff's Dep't*, 67 Mass. App. Ct. 596, 603 (2006).

Federal precedent also confirms that deteriorating work performance is not a

necessary element of a sexual harassment claim. After citing the opinions of Justices

Scalia and Ginsberg in *Harris v. Forklift Sys.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d

295 (1993), the First Circuit concluded:

> Thus, the trial court's instruction was incorrect in stating that "unreasonable[e] interfere[nce] with her work performance" was an absolute requirement for showing the existence of a hostile or abusive work environment.

*Scarfo v. Cabletron Sys., Inc.*, 54 F.3d 931, 945-46 (1st Cir. 1995).

The state of the law was summarized by Justices Ginsburg and Scalia in *Harris v. Forklift*

*Systems*:

> [T]he adjudicator's inquiry should center, dominantly, on whether the discriminatory conduct has unreasonably interfered with the plaintiff's work performance. To show such interference, "the plaintiff need not prove that his or her tangible productivity has declined as a result of the harassment." *Davis v. Monsanto Chemical Co.,* 858 F.2d 345, 349 (CA6 1988). It suffices to prove that a reasonable person subjected to the discriminatory conduct would find, as the plaintiff did, that the harassment so altered working conditions as to "ma[k]e it more difficult to do the job."

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25, 114 S. Ct. 367, 372, 126 L. Ed. 2d 295 (1993)(Ginsburg concurring).

> One of the factors mentioned in the Court's nonexhaustive list—whether the conduct unreasonably interferes with an employee's work performance—would, if it were made an absolute test, provide greater guidance to juries and employers. But I see no basis for such a limitation in the language of the statute. Accepting *Meritor*'s interpretation of the term "conditions of employment" as the law, the test is not whether work has been impaired, but whether working conditions have been discriminatorily altered.

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 24-25, 114 S. Ct. 367, 372, 126 L. Ed. 2d 295 (1993)(Scalia concurring).

The Massachusetts Commission Against Discrimination has issued "Sexual Harassment in the Workplace Guidelines" (http://www.mass.gov/mcad/shguide.html) that are entitled to "substantial deference" in interpreting M.G.L. c. 151B. *Modern Cont'l/Obayashi v. Massachusetts Comm'n Against Discrimination*, 445 Mass. 96, 106, 833 N.E.2d 1130, 1138 (2005).

The MCAD Guidelines describe the elements of a hostile environment sexual harassment claim as follows:

> In a hostile work environment case, the complainant must prove:
> - she was subjected to conduct of a sexual nature;
> - the conduct of a sexual nature was unwelcome;
> - the conduct of a sexual nature had the purpose or effect of creating an intimidating, hostile, humiliating or sexually offensive work environment; and
> - the conduct unreasonably interfered with complainant's work performance or altered the terms and conditions of the complainant's employment.

(MCAD Sexual Harassment in the Workplace Guidelines, § 2, Hostile Work Environment, http://www.mass.gov/mcad/shguide.html.)

The record demonstrates in multiple ways that harassment by Mr. Wilson, followed by Wal-Mart's purposely ineffectual investigation and response to Wilson's harassment, "altered the terms and conditions" of her work and made Ms. Lightbody's

job more difficult to do. Ms. Lightbody experienced "severe emotional distress, including heart palpitations, sleeplessness, bouts of crying, shaking, muscle tension in her neck, depression, hopelessness, doubts about her self-worth and short-tempered treatment of family and friends." (Lightbody Answers to Interrogatories, Doc 21-1, p. 138. *See* Lightbody Deposition, Doc 21-1, p. 41.) She was treated by her doctor with Celexa, an anti-depression medication given to her "for anxiety, and it would help, should help, or depression too, it will help with my feelings." (Lightbody Deposition, Doc 21-1, p. 43.)

Ms. Lightbody's symptoms did not end with Mr. Wilson's departure in June of 2010. In 2010 or 2011 she "actually asked [her physician] to take me out of work so that I could relax and get my head straight, and that was after all that happened, but it still, I felt repercussions from it." (Lightbody Deposition, Doc 21-1, p. 47.)

> Q. What was the anxiety from work that you were experiencing --
> A. Everything that happened --
> Q. -- in 2011?
> A. Everything that happened leading up to all that big mess and how I felt. He still was allowed to work there for six months plus with me, and him continuing to do disgusting things to me, that's something you don't forget.

(Lightbody Deposition, Doc 21-1, p. 47.)

Ms. Lightbody's psychological distress and symptoms were also attributable in large part to Wal-Mart's failure to respond to her complaint adequately. (*See* pp. 8-15, *infra*.)

> I know I was very upset about it, and because I felt they were blaming me for everything that was happening, and then when I found out he was going to stay in the building, Dave [Minsky— Jennifer Charles' supervisor] sided with me. I was very angry and upset about it because I

> thought that wasn't the right thing to do. I just
> don't remember exactly what they said.

(Lightbody Deposition, Doc. 21-1, p. 86.)

> Q. And do you recall what Mr. Minsky said during
> that meeting?
> A. Something about maybe going, working in
> another store or something to that effect, and I did
> say to him I wasn't going to go to another store,
> because I did nothing wrong.
> Q. Okay.
> A. It was up to them to protect me.

(Lightbody Deposition, Doc 21-1, p. 87.)

A significant part of Ms. Lightbody's distress was also attributable to Wal-Mart's

suggestion that she was to blame for the harassment she suffered:

> Q. Any other reasons why you didn't trust Ms. Castillo
> [Charles]?
> A. I think because of the way, the things she
> was asking me about myself, my appearance, how I
> portray myself, like I honestly would not fool around
> with any type of man like that about sexual stuff, just
> never would do it in the workplace or outside of the
> workplace. I felt I was getting, it got twisted that I
> brought this all on myself.

(Lightbody Deposition, Doc 21-1, p. 121-122.)

The record thus contains substantial evidence that Mr. Wilson's behavior and

Wal-Mart's purposely deficient response to Ms. Lightbody's complaints caused her

substantial distress, altering the conditions of her employment and making it more

difficult for her to continue to return to work and do her job. There is, therefore,

substantial evidence that Ms. Lightbody's work circumstances had been discriminatorily

changed, and summary judgment must be denied.

### B.    Wilson's Behavior Unquestionably Constituted Sexual Harassment

Wal-Mart argues that "None of [Wilson's] conduct was physically threatening in any way," (Defendant's Memorandum, Doc 19, p. 7), and that "the above-referenced actions simply do not rise to the level of severity or frequency required to constitute hostile work environment harassment." (Id.) In fact, Ms. Lightbody's original complaint cited nine separate incidents of harassment between November 9 and December 15, 2009. (Doc 22-1, p. 2.) The two occasions when Wilson pinched or grabbed the plaintiff's stomach were both violations of M.G.L. c. 265, § 13A, the Massachusetts assault and battery statute.

> To prove a violation of G.L. c. 265, § 13A, when the battery at issue is offensive (as opposed to harmful), the Commonwealth must prove beyond a reasonable doubt that the defendant, without justification or excuse, intentionally touched the victim, and that the touching, however slight, occurred without the victim's consent. *Commonwealth v. Cohen,* 55 Mass.App.Ct. 358, 359, 771 N.E.2d 176 (2002).

*Com. v. Hartnett*, 72 Mass. App. Ct. 467, 476, 892 N.E.2d 805, 814 (2008) (footnote omitted).

These two criminal acts were not the only time Mr. Wilson touched Ms. Lightbody offensively. In the December 9, 2009 incident listed in her initial complaint, the following occurred:

> A. In the men's department, which was actually, that was my birthday, and I was on a step stool doing signing in the men's department, so I was, like say if that was the wall, I was against the wall doing the signing. He came right, I mean as close as you can possibly get to someone, and so he was behind me, so his stomach was like touching my backside, and he said that I was really hot, and that I excite him.

(Lightbody Deposition, Doc 21-1, p. 68-69.)

Multiple incidents of offensive touching, interspersed with claims that Ms.

Lightbody was "hot" and "excited" him, and incidents when he made suggestive gestures, fully meet the requirements for a hostile environment sexual harassment claim in Massachusetts:

> Incidents of sexual harassment serious enough to create a work environment permeated by abuse typically accumulate over time, and many incidents in isolation may not be serious enough for complaint. See *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). However, when linked together, the seemingly disparate incidents may show a prolonged and compelling pattern of mistreatment that have forced a plaintiff to work under intolerable, sexually offensive, conditions.

*Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521, 532-33, 750 N.E.2d 928, 937 (2001).

Mr. Wilson's conduct "was sufficiently pervasive to alter the conditions of [Ms. Lightbody's] employment, and thus created a sexually harassing working environment." *Coll.-Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 162, 508 N.E.2d 587, 591 (1987). There is unquestionably sufficient evidence for a jury to determine whether Mr. Wilson's "conduct ha[d] the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment." M.G.L. c. 151B, § 1(18), and summary judgment must be denied.

### C.    Walmart Is Liable Under ch. 151B For Failing to Conduct An Adequate Investigation And Failing to Discipline Mr. Wilson Adequately.

On December 17, 2009, Ms. Lightbody formally complained about Mr. Wilson, noting the following violations of company sexual harassment policy:

> a) Wilson had twice assaulted her by "pinch[ing]" or "grab[bing]" her stomach, and had been about to "pinch" her "butt" when he saw a customer was observing him and stopped.
> b) Wilson had on multiple occasions told her how "hot" she was and how she "excite[d]" him.

c) Wilson had repeatedly made suggestive gestures, such as rolling his tongue over his lips while looking at Ms. Lightbody.

(Lightbody Complaint Letter 12-17-09, Doc 22-1, pp. 2-3; Castillo Investigation Notes 12-22-09, Doc 22-2, pp. 3-4.)

In response to Ms. Lightbody's complaint, Wal-Mart Market Human Resources Manager Jennifer Castillo (now Jennifer Charles) conducted an investigation. (Charles Affidavit, Doc 22, p. 2.) Ms. Castillo interviewed only four people: Ms. Lightbody, Mr. Wilson, and Wal-Mart employees Cathleen McComb and Bonnie McLaughlin. (Charles Affidavit, Doc 22, p. 2.) Ms. Charles closed her investigation after these interviews, and concluded:

10. The only allegation made by Lightbody that I was able to corroborate was Wilson's statement about "sitting naked on the couch." During my investigation, however, I also learned that Wilson had made an inappropriate comment concerning spanking to a different Associate.

(Charles Affidavit, Doc 22, p. 2.)

In Mr. Wilson's written statement to Ms. Charles, he claimed that Ms. Lightbody's complaint was a lie, designed to stop him from making changes in store operations: "I know I have tried to change the direction in which the store is going and may have stepped on some toes. And that is why I am being investigated." (Wilson Statement 12-26-09, Doc 22-2, p. 12.) Ms. Charles was confronted with conflicting accounts, and under the circumstances she knew that either Mr. Wilson or Ms. Lightbody was deliberately lying. Wal-Mart was obligated under M.G.L. c. 151B to undertake an adequate investigation and attempt to resolve this conflict, *Trinh v. Gentle Commc'ns, LLC*, 71 Mass. App. Ct. 368, 376, 881 N.E.2d 1177, 1184 (2008), and presumably any employer that knows one of its staff is purposely attempting to mislead the company would make a concerted effort to find out which one was the liar.

9

Ms. Charles made no effort to resolve this swearing contest, instead concluding that without "corroborat[ion]" from the only two other witnesses she interviewed, she could not make a judgment on credibility. (Doc 22, p.2.)

It is clear from the two other witness' statements that Ms. Charles deliberately chose not to seek corroboration of Ms. Lightbody's claims, and deliberately failed to follow up on evidence that Mr. Wilson had harassed multiple other female employees. Wal-Mart employee Cathleen McComb's 12-21-09 statement to Ms. Charles contains the following passages:

> Within the first 2 weeks of his [Wilson's] arrival he made a comment to me about how beautiful I was and asked me if I were married. As the weeks and months progressed he would sit very close, either next to me or behind me at my desk and put his arm on my shoulder or around me and it seemed that his hand would wander touching my arm. Although I did not say anything I did move away. Sometimes while he is standing behind me, he puts his hands on my shoulders but I then again move away. At first I just thought nothing of it, but then I started hearing very similar stories from other female associates. Some with much more inappropriateness.

(McComb Statement 12-22-09, Doc 2-22, p. 18.)

> On December 11 [2009] I was having a discussion [sic] with Robin about something I did not agree with him on and he told he I was being bad and that he was going to spank me and he gestured the motion while he was very bright eyed and smiling.

(McComb Statement 12-22-09, Doc 2-22, p. 18.)

It is evident from Ms. Charles' investigation notes and her affidavit in support of Wal-Mart's motion for summary judgment (Docs 22, 22-1, 22-2) that she chose to ignore Ms. McComb's evidence that Wilson made inappropriate comments and touched her inappropriately, except for the spanking reference. Most significantly, Ms. Charles also failed to follow up on Ms. McComb's reference to "other female associates" who told her stories about Mr. Wilson that revealed "much more inappropriateness." In choosing not

to identify or interview these additional witnesses, Ms. Charles failed to conduct an

adequate investigation and confirmed the plaintiff's claim that Wal-Mart consciously

chose not to look into allegations that would have forced the company to terminate Mr.

Wilson.

The only other Wal-Mart employee Ms. Charles interviewed was Bonnie

McLaughlin. As with Ms. McComb, on December 21, 2009 Ms. McLaughlin provided

clear evidence that Mr. Wilson had harassed other female employees in much the same

ways Ms. Lightbody alleged she had been harassed. Ms. McLaughlin's statement

includes the following information:

> Robin reaches out to touch my hand or shoulder when he approaches in the
> invoice office, hallway and out on the sales floor, to have a conversation.

(McLaughlin Statement 12-21-09, Doc 2-22, p. 23.)

> He tends to get very close to my face when he speaks to me. This does make me
> feel uncomfortable causing me to back away somewhat and to avoid speaking to
> Robin except via walkie or telephone. When just passing in the back hallway or
> entering the invoice office Robin usually says "Hey, beautiful" or "You are a
> beautiful woman." Several times he asked "Are you married" and "Do you know
> you're a beautiful woman, seriously?" which leads me to believe he is just saying
> these things without thinking, especially thinking of the appropriateness or
> consequences. At least 3 times while looking for information on the computer,
> Robin while standing behind me leaned in very close alongside my head, with his
> had pressing on my shoulder which made me feel tense and uncomfortable.

(McLaughlin Statement 12-21-09, Doc 2-22, p. 23-24.)

> On one occasion, Robin told Cathy, the personnel mgr. that she was being very
> bad and he would have to spank her. Later, when Robin was gone, Cathy asked
> me if I had seen the gesture he had made toward her, but I had only heard the
> comment about spanking her, since I was engaged in doing a CBL [Computer
> Based Lesson] on the computer.

(McLaughlin Statement 12-21-09, Doc 2-22, p. 24.)

> I regret that I was too timid to make Robin aware of the uncomfortable situations
> he had caused me. But then, at least 6 other female associates have asked me

> about Robin's actions and have stated the [sic] similar incidents have happened
> with them in both one-on-one and group situations causing stress and
> uncomfortable feelings.

(McLaughlin Statement 12-21-09, Doc 2-22, p. 24.)

Ms. Charles purposely chose not to interview the "at least 6 other female

associates" Ms. McLaughlin refers to. Ms. Charles also chose not to interview the

customer who confirmed that Mr. Wilson was about to pinch Ms. Lightbody's backside

when he saw the customer was looking, and stopped. (See Doc 22-1, p. 2; Doc 22-2, p.

2.)

Wal-Mart's investigation was closed by January 7, 2010, when Ms. Charles

concluded that "The only allegation made by Lightbody that I was able to corroborate

was Wilson's statement about 'sitting naked on the couch.'" (Charles Affidavit, Doc. 22,

p. 2.) As of January 7, Wal-Mart's investigation was unquestionably "deferential and

inadequate" *Coll.-Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against*

*Discrimination*, 400 Mass. 156, 168, 508 N.E.2d 587, 594 (1987), and the defendant's

investigation had not "included those employees who would have been expected to have

knowledge of the incidents." *Coll.-Town, Div. of Interco, Inc. v. Massachusetts Comm'n*

*Against Discrimination*, 400 Mass. 156, 174, 508 N.E.2d 587, 597 (1987)(Lynch

dissenting). The MCAD's Sexual Harassment in the Workplace Guidelines, § 6,

Investigating Sexual Harassment Complaints, states that:

> The employer's investigation should generally include interviews of the
> complainant, the alleged harasser, witnesses, individuals whom any of the
> foregoing identify as having knowledge of potential relevance to the allegations,
> and anyone else whom the employer believes may have such knowledge.

(http://www.mass.gov/mcad/shguide.html#IIIB.)

The MCAD Guidelines on Sexual Harassment are entitled to "substantial

deference:"

> Where the Legislature has expressly delegated to the MCAD the task of "formulat[ing] policies to effectuate the purposes" of G.L. c. 151B and given it authority to "adopt, promulgate, amend, and rescind rules and regulations" to implement the statute, G.L. c. 151B, §§ 2, 3(5), we accord substantial deference to the MCAD's interpretive guidelines. See *Dahill v. Police Dep't of Boston,* 434 Mass. 233, 239, 748 N.E.2d 956 (2001), and cases cited.

*Modern Cont'l/Obayashi v. Massachusetts Comm'n Against Discrimination*, 445 Mass. 96, 106, 833 N.E.2d 1130, 1138 (2005).

Ms. Charles' decision to skip interviews of "individuals whom any of the foregoing identify as having knowledge of potential relevance to the allegations, and anyone else whom the employer believes may have such knowledge" violated the MCAD Guidelines on Investigating Sexual Harassment Complaints, further confirmation that Wal-Mart failed to respond appropriately to Ms. Lightbody's complaint.

Moreover, it is clear that the limited discipline given to Mr. Wilson was based in part on inappropriate behavior that was disclosed by the investigation but had nothing to do with Ms. Lightbody. (Doc 22, p. 2.) By choosing <u>not</u> to interview "at least 6" employees and the customer witness who would have provided further evidence of Mr. Wilson's inappropriate behavior with them, Wal-Mart deliberately chose not to learn information that might have disclosed additional misconduct with other female employees or forced Wal-Mart to conclude that Mr. Wilson was lying when he denied Ms. Lightbody's charges. By choosing to ignore witnesses, Wal-Mart failed to meet its legal obligation to conduct an adequate investigation and remedial response. The Supreme Judicial Court has described the standard an employer must meet when responding to a sexual harassment complaint as follows:

> The issue is whether it took steps reasonably calculated to stop the harassment
> and prevent recurrence of the harassment, with the reasonableness of those steps
> considered in light of its practical ability to control the actual perpetrators.

*Modern Cont'l/Obayashi v. Massachusetts Comm'n Against Discrimination*, 445 Mass.
96, 118, 833 N.E.2d 1130, 1146 (2005).

Wal-Mart's deliberately superficial investigation and inadequate discipline of Mr. Wilson

failed that standard, and summary judgment must be denied.

Wal-Mart's determination to suppress information that might have forced it to

terminate Robin Wilson was confirmed in mid-January, 2010. On January 11, 2010, Ms.

Lightbody and Wal-Mart employee Alyssha Dellis met with Assistant Manager Walter

Budz. At that meeting, Ms. Dellis told Mr. Budz that she had witnessed Mr. Wilson

grabbing and pinching Ms. Lightbody's stomach at least twice. (Lightbody Deposition,

Doc 21-1, p. 93; Lightbody Answers to Interrogatories, Doc 21-1, p. 138.) Despite Wal-

Mart management's knowledge of this new witness who could "corroborate" the claim

that Mr. Wilson had assaulted Ms. Lightbody, Wal-Mart did not reopen the investigation

into Mr. Wilson, and he remained at the Walpole store, working with Ms. Lightbody, for

six months. By choosing not to reopen the investigation and confirm the assault and

battery accusation Ms. Charles claimed she was not "able to corroborate," Wal-Mart

violated its investigation and remediation duties under M.G.L. c. 151B.

In June of 2010, Ms. Lightbody again complained about Mr. Wilson's behavior—

in this case, staring at her chest. (Charles Affidavit, Doc 22, p. 3.) In response, Ms.

Charles again investigated, this time interviewing four witnesses. In addition to

corroborating Ms. Lightbody's staring allegation, Ms. Charles also learned from "another

Associate . . . that Wilson had made inappropriate comments to her (but not to

Lightbody) and had grabbed her on the waist on at least one occasion. Those statements

included: 'You're yummy,' 'You're beautiful,' and 'I could just eat you up.'" (Id.) This time, Wal-Mart fired Wilson for sexual harassment that mirrored the earlier allegations by Ms. Lightbody that Wal-Mart claimed it was not "able to corroborate." (Id.)

"An employer may be found directly liable for discrimination under G.L. c. 151B, § 4, if it is notified of sexual harassment in its workplace and fails to take adequate remedial action. *College–Town, Div. of Interco, Inc. v. Massachusetts Commn. Against Discrimination,* 400 Mass. at 167, 508 N.E.2d 587." *Trinh v. Gentle Commc'ns, LLC*, 71 Mass. App. Ct. 368, 376, 881 N.E.2d 1177, 1184 (2008). Wal-Mart is thus liable to Ms. Lightbody for failing to conduct an adequate investigation and failing to take appropriate remedial measures. Wal-Mart's deficient investigation and remediation also expose it to liability for Mr. Wilson's harassing behavior. As stated by the S.J.C.:

> An employer who passively tolerates the creation of a hostile working environment implicitly ratifies the perpetrator's misconduct and thereby encourages the perpetrator to persist in such misconduct, whatever the employer's precise legal relationship to the perpetrator. Moreover, acquiescence on the part of the employer effectively communicates to the victim of harassment that her employer does not care about the hostile environment in which she must work, a message that can only operate to exacerbate the adverse effects of that hostile environment. In this context, an employer who is not part of the solution inevitably becomes part of the problem.

*Modern Cont'l/Obayashi v. Massachusetts Comm'n Against Discrimination*, 445 Mass. 96, 105, 833 N.E.2d 1130, 1138 (2005).

Ms. Lightbody's claim that Wal-Mart conducted a purposely limited and inadequate investigation, and failed to impose appropriate discipline on Mr. Wilson, present clear issues of fact for the jury on the principal issues in this case—i.e., whether Wal-Mart violated ch. 151B through its inadequate response to Ms. Lightbody's complaint, and whether Wal-Mart's inadequate response make it liable for Mr. Wilson's sexual harassment of the plaintiff.

III.    **CONCLUSION**

For the reasons stated above, the defendant's Motion for Summary Judgment must be denied.

Respectfully submitted,

Plaintiff,
DIANA LIGHTBODY,
By her attorney:

/s/ Samuel Perkins
Samuel Perkins, BBO # 542396
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100
(617) 880-7171
sperkins@bhpklaw.com

Dated: July 24, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

/s/ Samuel Perkins
Samuel Perkins, BBO #542396

Dated: July 24, 2014