UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DIANA LIGHTBODY, ) | |
| ) | |
| Plaintiff ) | |
| ) | C.A.NO. 1:13-CV-10984-DJC |
| v. ) | |
| ) | |
| WAL-MART STORES EAST, L.P. ) | |
| ) | |
| Defendant ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

     Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, plaintiff Diana Lightbody submits the following response to the defendant's Statement of Material Facts in support of its Motion for Summary Judgment. The defendant's claimed undisputed material facts are set out below, followed by the plaintiff's admission or dispute of those claimed facts.

     1.    In June of 1994, Lightbody began working at Walmart's Walpole, Massachusetts location as a sales associate. Deposition of Diana Lightbody ("Lightbody Dep.") at p. 12:8-18.

     *Not disputed by plaintiff.*

     2.    Over the years, Lightbody received a number of promotions, culminating in her elevation to the position of Zone Merchandise Supervisor in 2009. Lightbody Dep. at p. 13:9-24.

     *Not disputed by plaintiff.*

     3.    In this position, Lightbody was responsible for overseeing the apparel department in the Walpole store, which includes jewelry, shoes, and accessories. Lightbody Dep. at pp. 17:8-13; 24:5-24, Ex. 2.

     *Not disputed by plaintiff.*

     4.    Lightbody reported to Assistant Manager Kerrie Ortiz. Lightbody Dep. at pp. 19:17-24; 20:1-2.

*Not disputed by plaintiff.*

5.  During the course of her employment with Walmart, Lightbody was made aware of, and received training concerning, Walmart's Discrimination and Harassment Prevention Policy. Lightbody Dep. at pp. 26:7-24; 27:1-22; 31:15-24; 32:1-10.

*Not disputed by plaintiff.*

6.  That policy encourages Associates to report any harassing behavior to a salaried member of management or the Company's toll-free Global Ethics hotline. Lightbody Dep., Ex. 3.

*Not disputed by plaintiff.*

7.  In October 2009, Robin Wilson began working at the Walpole store as an Assistant Manager. Affidavit of Jennifer Charles ("Charles Aff.") ¶ 5.

*Not disputed by plaintiff.*

8.  Wilson was responsible for operations, which included the cash registers at the front of the store, as well as the back rooms where merchandise is stored. Lightbody Dep. at p. 34:6-12.

*Not disputed by plaintiff.*

9.  On December 17, 2009, Lightbody submitted a handwritten letter to Leo Desousa, the Store Manager in Walpole. Lightbody Dep. at pp. 78:16-24; 79:1-8; 81:2-5; Charles Aff. ¶ 6, Ex. A.

*Not disputed by plaintiff.*

10. In her letter, Lightbody identified various instances of inappropriate behavior by Wilson towards her in the preceding month. Charles Aff., Ex. A.

*Not disputed by plaintiff.*

11. Specifically, Lightbody asserted that in the preceding month Wilson had: (1) told her four times that she was "hot" and once that she "excite[s] him"; (2) pinched her on the stomach twice; (3) tried to pinch her buttocks on one occasion (but did not actually do so); (4) told her and others that he planned to sit on his couch naked all weekend; (5) once asked her if she needed lip gloss and then licked his lips; and (6) stared at her once and then licked his lips. Charles Aff., Ex. A.

*Not disputed by plaintiff.*

12. This was the first time Walmart had received a complaint about Wilson's conduct in the workplace. Charles Aff. ¶ 8.

*The plaintiff has no evidence to dispute this claimed fact, but does not admit it.*

13. On December 18, 2009, Walmart opened an investigation of these allegations. Charles Aff. ¶ 7.

*Not disputed by plaintiff.*

14. Walmart assigned Jennifer Castillo, the Company's Market Human Resources Manager, as the lead investigator. Charles Aff. ¶ 7.

*Not disputed by plaintiff.*

15. On December 21, 2009, Castillo interviewed two Associates from the Walpole store. Charles Aff. ¶ 9, Ex. B.

*Not disputed by plaintiff.*

16. On December 22, 2009, Castillo met with Lightbody, who reiterated the concerns in her letter to Desousa. Charles Aff. ¶ 9, Ex. B.

*Not disputed by plaintiff.*

17. On December 26, 2009, Castillo interviewed Wilson, who denied many of Lightbody's allegations. Charles Aff. ¶ 9, Ex. B.

*Not disputed by plaintiff.*

18. The only allegation made by Lightbody that Castillo was able to corroborate was Wilson's statement about "sitting naked on the couch." Charles Aff. ¶ 10.

*Disputed. As argued in the Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment p. 8-15, and as demonstrated by the documents cited at p. 8-15, Castillo (Charles) conducted a deliberately deficient investigation, and did not interview the "more than 6" witnesses identified by Ms. Lightbody and the two associates Ms. Castillo (Charles) interviewed. (McComb Statement 12-22-09, Doc 2-22, p. 18; McLaughlin Statement 12-21-09, Doc 2-22, p. 23-24.) There is, therefore, a dispute of material fact whether Ms. Castillo (Charles) was "able" to corroborate additional facts about Wilson's harassment, and whether her investigation satisfied Wal-Mart's obligation to conduct a thorough investigation and take appropriate corrective action to protect Ms. Lightbody.*

19. Castillo's investigation also revealed that Wilson had made an inappropriate comment concerning spanking to a different Associate: Wilson said that the Associate had been "bad" and that therefore he may need to spank her. Charles Aff. ¶ 10,

3

Ex. B.

*Not disputed by plaintiff.*

20. Based on these findings, on January 7, 2010 Walmart disciplined Wilson by giving him a Decision-Making Day Coaching. Charles Aff. ¶ 11, Ex. C.

*Not disputed by plaintiff.*

21. The Decision-Making Day Coaching (which is one step short of termination) put Wilson on notice that any subsequent violation of Walmart policy would result in his immediate termination. Charles Aff. ¶ 11; Lightbody Dep. at p. 90: 1-14.

*Not disputed by plaintiff.*

22. Walmart also required Wilson to undergo additional training regarding Walmart's policy against sexual harassment and reminded him that he was expected to comport himself in a professional manner at all times. Charles Aff. ¶ 11.

*Not disputed by plaintiff.*

23. On May 15, 2010, Lightbody received a rating of "exceeds expectations" on her performance evaluation from her manager, Kerrie Ortiz. Charles Aff. ¶ 12, Ex. D.

*Not disputed by plaintiff.*

24. Lightbody did not contact Castillo, or anyone else at Walmart, with any additional concerns about Wilson until June 3, 2010. Charles Aff. ¶ 13; Lightbody Dep. at p. 92:4-20.

*Denied. Lightbody and fellow Wal-Mart employee Alyssha Dellis spoke with Assistant Manager Walter Budz. Dellis told Budz that she had seen Mr. Wilson pinching and grabbing Ms. Lightbody's stomach at least twice. (Lightbody Deposition, Doc 21-1, p. 93; Lightbody Answers to Interrogatories, Doc 21-1, p. 138. See Lightbody Memorandum, p. 14.)*

25. On June 3, 2010, Lightbody informed Walmart that Wilson recently had stared at her breasts. Charles Aff. ¶ 14; Lightbody Dep. at pp. 113:1-24; 116:17-23, Ex. 8.

*Not disputed by plaintiff.*

26. On June 7th, Walmart suspended Wilson pending an investigation. Charles Aff. ¶ 14.

*Not disputed by plaintiff.*

27. On June 11th, Castillo interviewed four Associates, including Lightbody

4

and Ortiz. Charles Aff. ¶ 15.

*Not disputed by plaintiff.*

28. Ortiz corroborated Lightbody's allegation that Wilson had stared at her breasts on one occasion. Charles Aff. ¶ 15.

*Not disputed by plaintiff.*

29. Another Associate informed Castillo that Wilson had made inappropriate comments to her (but not to Lightbody) and had grabbed her on the waist on at least one occasion. Charles Aff. ¶ 15.

*Not disputed by plaintiff.*

30. In light of these revelations, Walmart terminated Wilson's employment effective June 23, 2010. Charles Aff. ¶ 16.

*Not disputed by plaintiff.*

31. Lightbody continued working at Walmart until December 2013. Charles Aff. ¶ 17.

*Not disputed by plaintiff.*

32. Lightbody did not experience any sexual harassment after the termination of Wilson's employment. Lightbody Dep. at p. 111:12-14.

*Not disputed by plaintiff.*

        Respectfully submitted,

        Plaintiff,
        DIANA LIGHTBODY,
        By her attorney:

        /s/ Samuel Perkins
        Samuel Perkins, BBO # 542396
        BRODY, HARDOON, PERKINS & KESTEN, LLP
        One Exeter Plaza
        Boston, MA 02116
        (617) 880-7100
        (617) 880-7171
        sperkins@bhpklaw.com

Dated: July 24, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

                                            */s/ Samuel Perkins*
                                            Samuel Perkins, BBO #542396

Dated: July 24, 2014