UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DIANA LIGHTBODY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 13-cv-10984-DJC |
| WAL-MART STORES EAST, L.P., | ) ) ) | |
| Defendant. | ) ) ) ) | |

## MEMORANDUM AND ORDER

CASPER, J.                                                                                                           October 17, 2014

### I.   Introduction

Plaintiff Diana Lightbody ("Lightbody") has filed this lawsuit against Defendant Walmart Stores East, L.P. ("Walmart") alleging a violation of Mass. Gen. L. c. 151B, § 4. D. 1-1. Walmart has moved for summary judgment. D. 18. For the reasons stated below, the Court DENIES the motion.

### II.  Standard of Review

"Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law" based on the pleadings, depositions, and affidavits. Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008); Fed. R. Civ. P. 56. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Thompson v. Coca-Cola, Co., 522 F.3d 168, 175 (1st Cir. 2008) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). "A

1

fact is material if it has the potential of determining the outcome of the litigation." Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008). The Court must construe the record in the light most favorable to the non-movant and resolve all reasonable inferences in that party's favor. Prescott, 538 F.3d at 39. "[C]onclusory allegations, improbable inferences, and unsupported speculation" may be ignored. Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

### III. Factual Background and Procedural History

Unless otherwise noted, this factual summary is drawn from the material facts submitted by Walmart and undisputed by Lightbody. At all times relevant to this action Lightbody was employed at Walmart's Walpole, Massachusetts store as a Zone Merchandise Supervisor. D. 20 ¶¶ 1-2. Lightbody reported to Assistant Manager Kerrie Ortiz ("Ortiz"). Id. ¶ 4. Robin Wilson began working at the same store as an Assistant Manager in October of 2009. Id. ¶ 7. On December 17, 2009 Lightbody submitted a letter to the store manager identifying instances of Wilson's inappropriate behavior toward her. Id. ¶ 9-10. Lightbody stated that in the preceding month Wilson had told her four times that she was "hot" and once that she "excite[d] him." Id. ¶ 11. Wilson allegedly pinched Lightbody's stomach twice and tried to pinch her buttocks, but did not do so. Id. Lightbody also alleged that Wilson told her and others that he planned to sit on his couch naked all weekend. Id. Further, Wilson allegedly asked Lightbody if she needed lip gloss and then licked his lips. Id. Finally, Lightbody asserted that Wilson stared at her and then licked his lips. Id.

Walmart, which had not received any prior complaints regarding Wilson's workplace conduct, opened an investigation on December 18, 2009, the day after Lightbody submitted her allegations. Id. ¶¶ 12-14. Jennifer Castillo ("Castillo"), Walmart's Market Human Resources

Manager, was assigned to investigate Lightbody's claims.  Id. ¶ 14.  Over the next eight days, Castillo interviewed two employees in Walmart's Walpole store.  Id. ¶ 15.  She also interviewed Lightbody and Wilson.  Id. ¶¶ 16-17.  Wilson denied many of Lightbody's accusations.  Id. ¶ 17.

Walmart contends that the only allegation Castillo was able to corroborate was Wilson's statement concerning his intention to spend the weekend sitting naked on the couch.  Id. ¶ 18.  Lightbody alleges that Walmart's investigation was deficient because Castillo failed to interview all the potential witnesses identified by Lightbody and the two employees interviewed by Castillo.  Pl.'s Resp. to Def.'s Statement of Material Facts, D. 26, ¶ 18.  Lightbody argues that Walmart could have obtained corroboration of Wilson's misconduct had Castillo conducted a more thorough investigation.  Id.; D. 25 at 10.  It is undisputed, however, that Castillo's investigation revealed that Wilson told an employee (not Lightbody) that she had been "bad" and that Wilson may need to spank her.  D. 20 ¶ 19.

On January 7, 2010, Walmart disciplined Wilson by warning him that any subsequent violation of Walmart's harassment prevention policy would result in his immediate termination.  Id. ¶¶ 20-21.  Walmart also required Wilson to undergo additional training regarding Walmart's policy against sexual harassment.  Id. ¶ 22.

Although Walmart states that it heard nothing further from Lightbody concerning Wilson's conduct again until June 3, 2010, id. ¶ 24, it does not dispute that Lightbody and employee Alyssha Dellis ("Dellis") spoke with Assistant Manager Walter Budz ("Budz") prior to that date.  D. 26 ¶ 24.  Dellis told Budz that she saw Wilson pinch and grab Lightbody's stomach at least twice, apparently corroborating Lightbody's accusations.  Id.; D. 25 at 14.

On June 3, 2010, Lightbody informed Walmart that Wilson had recently stared at her breasts.  D. 20 ¶ 25.  On June 7, 2010, Walmart suspended Wilson pending an investigation of

3

Lightbody's accusation. Id. ¶ 26. Four days later, Castillo interviewed four employees, including Lightbody and Ortiz, who corroborated Lightbody's allegation. Id. ¶ 27-28. In addition, another employee told Castillo that Wilson had made inappropriate comments to the employee and grabbed her waist at least once. Id. ¶ 29.

As a result of Castillo's investigation, Walmart terminated Wilson's employment on June 23, 2010. Id. ¶ 30. Lightbody continued to work at Walmart until December 2013. Id. ¶ 31.

Lightbody instituted this action in Norfolk Superior Court. D. 1-1. Walmart removed the case to this Court, D. 1, and now moves for summary judgment. D. 18. The Court conducted a hearing on the pending motion and took the matter under advisement. D. 30.

**IV. Discussion**

**A. Sexually Hostile Work Environment**

Mass. Gen. L. c. 151B, § 4 makes it unlawful "[f]or any employer, personally or through its agents, to sexually harass any employee." "Sexual harassment" is defined by Mass. Gen. L. c. 151B, § 1(18) to be:

> sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when . . . such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment. Discrimination on the basis of sex shall include, but not be limited to, sexual harassment.

A *prima facie* case of a hostile work environment requires a plaintiff to show that (1) she is a member of a protected class; (2) she experienced unwelcome harassment; (3) the harassment was based on sex; (4) "the harassment was sufficiently severe or pervasive so as to alter the conditions of [the] plaintiff's employment and create an abusive work environment;" (5) the "sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so;"

4

and (6) "some basis for employer liability has been established." Ponte v. Steelcase Inc., 741 F.3d 310, 319-20 & n. 9 (1st Cir. 2014).

The heart of this dispute is whether the conduct of which Lightbody complains "was so severe or pervasive that it altered the terms or conditions of her employment." Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006); Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 46 (1st Cir. 2003). The evidence must demonstrate that Lightbody was "subjected to unwelcome sexual harassment objectively and subjectively severe enough to create an abusive work environment and that [her] employer failed to respond meaningfully." Foley v. Proctor & Gamble Distrib. Co., No. 01-11314-RWZ, 2003 WL 21696544, at * 2 (D. Mass. July 21, 2003) (citing O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)).

There is no precise test to determine whether a plaintiff has presented sufficient evidence that she was subjected to a severely or pervasively hostile work environment. Kosereis v. R.I., 331 F.3d 207, 216 (1st Cir. 2003). The Court must "examine all the attendant circumstances including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." Pomales, 447 F.3d at 83; see Harris v. Forklift Sys. Inc., 510 U.S. 17, 23 (1993). "Because this inquiry is fact specific, the determination is often reserved for a fact finder, but summary judgment is an appropriate vehicle for policing the baseline for hostile environment claims." Pomales, 447 F.3d at 83 (internal quotation marks and citations omitted). "The thrust of this inquiry is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." Rosemond v. Stop & Shop Supermarket Co., 456 F. Supp. 2d 204, 212 (D. Mass. 2006). A hostile work environment is one that is "pervaded by harassment or abuse, with the resulting intimidation,

humiliation, and stigmatization. . . ." College-Town, Div. of Interco., Inc. v. Mass. Comm'n Against Discrimination, 400 Mass. 156, 162 (1987).

Walmart argues that Lightbody cannot demonstrate that she worked in a sexually hostile environment that unreasonably interfered with her work performance. D. 19 at 5. Walmart contends that Lightbody has offered no evidence that the handful of incidents of which she complains interfered with her ability to work at Walmart. Id. Walmart points out that Lightbody received an excellent performance evaluation in May of 2010, D. 20 ¶ 23 (stating Lightbody received a rating of "exceeds expectations"), and that Lightbody worked for Walmart for more than three years after Wilson's employment was terminated. D. 19 at 5.

Walmart further argues that Wilson's alleged actions were not sufficiently "severe or pervasive" so as to constitute sexual harassment. Id. at 6. According to Walmart, while Wilson's comments may have made Lightbody uncomfortable, more is required to show that a workplace is pervaded by harassment. Id. at 7. Moreover, Walmart notes that none of the alleged conduct was physically threatening and there were relatively few alleged incidents of harassment. Id.

The Court cannot conclude from the present record that no reasonable jury could find the alleged conduct created a hostile work environment. Applying the factors from Pomales and Harris cited above, a jury could conclude that the alleged incidents were frequent and the unwelcome touching, which Lightbody also alleges, was physically threatening and humiliating.[1] While Lightbody's performance reviews may not have suffered, contrary to Walmart's argument, that is not the sole indicator of whether Lightbody was subjected to a pervasively

---

[1]Lightbody contends that Wilson pinched her stomach on two occasions. D. 20 ¶ 11. She also appears to allege that there was a third incident involving physical contact in which Wilson approached Lightbody while she was on a stepstool and stood close enough to her that his stomach touched her buttocks. D. 25 at 7.

hostile work environment. There is evidence that she experienced "severe emotional distress, including heart palpitations, sleeplessness, bouts of crying, shaking, muscle tension . . ., depression, hopelessness, doubts about her self-worth and short-tempered treatment of family and friends." D. 25 at 5. Lightbody offers sufficient evidence from which a jury could conclude that that "the conduct alleged was sufficiently severe and pervasive to interfere with a reasonable person's work performance." Muzzy v. Cahillane Motors, Inc., 434 Mass. 409, 411-12 & n.2 (2001) (observing that alleged harassment must be both objectively and subjectively offensive and that the objective standard requires that "the evidence of sexual harassment is to be considered from the view of a reasonable person in the plaintiff's position") (internal quotation marks omitted).

### B. Inadequate investigation

Lightbody charges Walmart with failing to investigate her harassment accusations adequately. D. 25 at 8-15. An employer is liable for sexual harassment of an employee by another if it acts negligently. Baskerville v. Culligan Intern Co., 50 F.3d 428, 432 (7th Cir. 1995) (citing Meritor Sav. Bank v. Vinson, 477 U.S. 57, 71 (1986)); Rosemond, 456 F. Supp. 2d at 218 (stating that the First Circuit applies a negligence test for determining employer liability for co-worker harassment). "The employer's legal duty is thus discharged if it takes reasonable steps to discover and rectify acts of sexual harassment of its employees." Baskerville, 50 F.3d at 432. "[A]s the First Circuit has observed, 'where an employer has in good faith taken those measures which are both feasible and reasonable under the circumstances to combat the offensive conduct' it cannot be charged with discrimination." Cerqueira v. Corning Net Optix, No. 03-10306-DPW, 2004 WL 1932758, at * 7 (D. Mass. Aug. 13, 2004) (quoting DeGrace v. Rumseld, 614 F.2d 794, 805 (1st Cir. 1980)).

Once Walmart was alerted to the alleged harassment, it was obligated to take immediate and appropriate remedial action. Saad v. Stanley St. Treatment and Res., Inc., No. 92-11434-DPW, 1994 WL 846911, at * 8 (D. Mass. May 20, 1994). "[A]n inadequate response to a sexual harassment complaint could itself foster a hostile environment and so give rise to liability therefor." Id. at * 10. "[T]he chief measure of the adequacy of an employer's response is not the victim's own personal sense of justice, but rather – particularly where there is no prior history of workplace harassment – whether the behavior that gave rise to the complaint has ceased and does not threaten to reoccur." Id. "[T]he underlying question for summary judgment purposes is whether a reasonable jury could determine that the employer 'knew or should have known of the charged . . . harassment and failed to implement prompt and appropriate action.'" Rosemond, 456 F. Supp. 2d at 217 (quoting White v. N.H. Dept. of Corr., 221 F.3d 254, 261 (1st Cir. 2000)); see Foley, 2003 WL 21696544, at * 2 (stating that "[a]n employer is not liable if it takes prompt, effective, remedial action").

Lightbody states that her principal contention in this action is that Walmart's "deliberate failure to investigate . . . Wilson's harassment and its failure to impose appropriate discipline violated [chapter 151B] and caused [Lightbody] extreme psychological distress by forcing her to endure an ongoing work relationship with her harasser that was intimidating, hostile and sexually offensive." D. 25 at 2. Lightbody contends that Walmart's investigation was deficient primarily in two respects. First, Castillo failed to investigate statements regarding Wilson's alleged harassment of other female employees provided by the two employees Castillo interviewed following Lightbody's December 2009 complaint. Id. at 10-11. In particular, one of those employees stated that at least six other female employees cited inappropriate behavior on the part of Wilson, but Walmart failed to question those employees. Id. at 11-12. Lightbody asserts that

interviews of the six employees might have uncovered additional misconduct or led Walmart to discredit Wilson's denials regarding harassment of Lightbody. Id. at 13. Second, according to Lightbody, Walmart should have reopened its investigation in January of 2010 when employee Dellis corroborated Lightbody's allegations regarding Wilson grabbing and pinching Lightbody's stomach. Id. at 14.

Despite Walmart's contentions to the contrary, a reasonable jury could conclude that Walmart's investigation was deficient and failed to take appropriate remedial action. A jury could find that Walmart should have pursued the leads provided by the witnesses interviewed by Castillo as part of her initial investigation. One of those witnesses noted that "at least [six] other female associates have asked me about [Wilson's] actions and have stated [that] similar incidents have happened with them." D. 25 at 11-12. While only acts of sexual harassment directed against others that were known to Lightbody may be considered to be part of the environment in which she worked, Cuddyer v. Stop & Stop Supermarket Co., 434 Mass. 521, 541 (2001), a jury could conclude that a thorough investigation and formulation of an appropriate disciplinary action required Walmart to follow leads that bore on Wilson's credibility. Moreover, "hostile environment discrimination typically is not confined to one act, directed at one individual, one time; rather, it is a composite of workplace action and inaction." Ruffino v. State St. Bank & Trust Co., 908 F. Supp. 1019, 1038 (D. Mass. 1995). The adequacy of Castillo's investigation of Lightbody's allegations "will have a bearing on the defendant's liability at trial, but it is not dispositive on summary judgment." Cuddyer, 434 Mass. at 541.

## V. Conclusion

For the foregoing reasons, the Court DENIES Walmart's motion for summary judgment, D. 18.

**So Ordered.**

                                                          /s/ Denise J. Casper
                                                          United States District Judge